339 So.2d 186 (1976)
Douglas Ray MEEKS, Appellant,
v.
STATE of Florida, Appellee.
No. 47533.
Supreme Court of Florida.
October 28, 1976.
*187 John F. Howard, Fort Lauderdale, for appellant.
Robert L. Shevin, Atty. Gen., Wallace E. Allbritton and Andrew W. Lindsey, Asst. Attys. Gen., for appellee.
PER CURIAM.
This is a direct appeal from a murder conviction and death sentence. Our jurisdiction vests under Article V, Section 3(b)(1), Florida Constitution.
Appellant was convicted of murder in the first degree, robbery, assault with intent to commit murder, and possession of a firearm during commission of a felony. For these crimes he was sentenced respectively to (1) death, (2) life imprisonment, and (3) two consecutive terms of 15 years imprisonment.
At 8:00 p.m. on the night of November 6, 1974, the appellant and another man entered the Jr. Food Store in Perry, Florida. Appellant drew a gun on Dianne Allen, the cashier, while his companion grabbed Lloyd Walker, a 16-year-old boy who had been talking to Miss Allen before the two men entered. Miss Allen gave the appellant approximately $35 from the cash register. The robbers marched Allen and Walker to the bottle storage room, where the victims were forced to lie on the floor on their stomachs. Several shots were fired; Lloyd Walker died from his wounds six days later, but Dianne Allen survived her wounds and testified for the State at trial. She was unable to say that appellant Meeks actually fired the shots, although she identified him as the man with gun at the time the cash register was emptied.
*188 At trial the prosecution produced witnesses who identified the decedent from a photograph marked for identification as "Exhibit No. 2." Then a pathologist testified for the State that he had performed the autopsy on the body identified to him as Lloyd Walker, and the doctor proceeded to identify the exhibit as a picture of a person upon whom he had performed the autopsy. This photograph, along with two others marked for identification as State's Exhibits 3 and 4, respectively, was then admitted into evidence over defense objection that a proper predicate had not been laid. The trial court also denied a request to strike testimony of another witness to the effect that he had learned of the fact and time of Lloyd Walker's death "from Tallahassee."
After the jury verdict of guilty on all four counts was returned, the second phase of the bifurcated trial mandated by Section 921.141, Florida Statutes (1975), was entered. Counsel for defendant objected to the prosecutor's use of conviction on the other three counts as constituting aggravating circumstances, but this objection was overruled by the court. Another statement of the prosecutor referring to creating a great risk of death to many persons, even though there were only two victims in the instant crime, was objected to and overruled as well. The jury came back with a recommendation of the death penalty, and the judge announced the sentences discussed above.
On this appeal Meeks raises four points which he contends require reversal of his conviction for first degree murder. The only issue which we find to merit any discussion is his allegation that the corpus delicti of the crime was not proven by competent evidence.
Appellant argues that there was no testimony of the death of Lloyd Walker by any person who knew of his own independent knowledge of that event. The fact of the victim's death was sought to be established only through photographs and through the testimony of the pathologist as summarized above. No "chain of identification" was ever established. Appellant contends that the State's efforts in this area were inadequate under Jefferson v. Sweat, 76 So.2d 494 (Fla. 1954), which states that the corpus delicti cannot be established by presumption.
There are three elements of the corpus delicti in homicide cases: (1) the fact of death, (2) the criminal agency of another person, and (3) the identity of the deceased. Lee v. State, 96 Fla. 59, 117 So. 699 (1928); Sims v. State, 184 So.2d 217 (Fla.2d DCA 1966). In Trowell v. State, 288 So.2d 506 (Fla. 1st DCA 1973), the Court set out nine methods by which the fact of death and the identity of the deceased could have been proven. Two of these means of proof are:
"4. A photograph could have been taken of the cadaver which was autopsied which could later at trial have been identified by any person who knew him in his lifetime;
"5. A picture properly identified as Raymond Jones when alive could have been identified at trial as the person upon whom Doctor Klein performed the autopsy;"
At trial in the instant case a police officer testified that he personally knew the victim, had seen him on the date of the crime with a bullet hole in the back of the head, and identified the decedent from the photographs marked for identification as State's Exhibit No. 2. Another witness gave identical testimony. The pathologist gave the testimony summarized above and also identified individual wounds, reproduced in other photographs entered into evidence by the State as exhibits numbered 3 and 4, as belonging to the individual described to him as Lloyd Walker. A state law enforcement officer testified that he attended the autopsy on the person in the photograph, noting further that that person had a wristband identifying him as Lloyd Walker. In view of the foregoing, the State clearly satisfied the criteria of Lee, Sims and Trowell, supra, and proved the existence of corpus delicti beyond all reasonable doubt.
*189 Appellant raises three points challenging the trial court's imposition of the death penalty. First, he suggests that the entire jury should have been polled as to whether a majority had recommended that sentence. This argument fails when it is realized that defense counsel specifically approved the procedure utilized by the court:
"CLERK: Advisory sentence recommending the death sentence, a majority of the Jury advise and recommend to the Court that it impose a sentence of death on Douglas Ray Meeks, the Defendant. Dated this 12th day of March, 1975 at Perry, Florida, signed Lester J. DeBusk, foreman of the Jury.
"MR. WILLIS [prosecuting attorney]: The State prays judgment, Your Honor.
"MR. HOWARD [defense attorney]: Your Honor, can we have the Jury polled as to the decision?
"MR. WILLIS: I have no objection to asking the foreman if seven of his number, if this is the advisory recommendation of seven of his number. I don't think the individual members should be polled, it would be an invasion of secrecy of their deliberations.
"COURT: Do you have anything else?
"MR. HOWARD: I don't want them to reveal their individual vote, as long as it is a majority.
"COURT: Mr. Foreman, do seven or more of your members of your Jury agree to the verdict that has just been rendered in open Court?
"FOREMAN: Yes, sir, they do.
"COURT: Does that answer your question?
"MR. HOWARD: Yes, Your Honor.
"COURT: The Defendant will rise... ."
Second, appellant argues that Section 921.141(5)(b)  setting forth as an aggravating circumstance the fact that "[t]he defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person"  should not be interpreted so as to include concurrent felony convictions; e.g., the convictions for robbery, assault to commit murder, and possessing a firearm during commission of a felony in the instant case. During the second phase of the trial, the state attorney referred to these convictions as previous convictions under Section 921.141(5)(b), Florida Statutes (1975), and also argued that the instant crime created a great risk of death to many persons, an aggravating circumstance under Section 921.141(5)(c). Meeks contends that these statements were improper and inflammatory.
The actual exchange at this point in the trial follows, with the prosecutor in the process of enumerating the aggravating circumstances under the death penalty statute:
"`B,' the Defendant was previously convicted of another capital felony or of a felony involving the use of threat of violence to the person.
"That is not applicable in this case. He was not convicted of another capital felony or a felony involving the use of threat of violence, except you just convicted him of robbery. You just convicted him of assault with intent to commit murder on Dianne Allen. You just convicted him of the use of a firearm during the commission of a felony, which is a threat of violence to another person. So as to your deliberations at this point, judgment of verdicts of guilty have been returned against him for those three offenses that are not murder.
"MR. HOWARD: At this time I move that the remarks of the prosecutor be stricken. This is previous. We are talking about something happened at this time. The murder verdict was rendered first, which would therefore make the others subsequent and not previous. He is misinforming the Jury as to that particular aggravating circumstance. It should be stricken.
"MR. WILLIS: The advisory sentence is not rendered. It is previous to the advisory sentence.
"COURT: One moment.
"(Pause)

*190 "COURT: Overruled.
"MR. WILLIS: So he has been found guilty by you of other felonies."
The State points out that, while the prosecutor noted that the three other felony convictions did occur prior to the jury's rendering the advisory sentence, he specifically stated that subsection (b) did not apply in this case. Although it is true that contemporaneous convictions do not qualify as an aggravating circumstance vel non under Section 921.141(5)(b), Florida Statutes (1975), we agree that the effect here could not have been prejudicial. The fact that the murder was committed in the course of a robbery was fair subject for comment, because this aspect of the crime demonstrated the existence of the aggravating circumstances enumerated in subsections (5)(d) (capital felony occurred while in commission of robbery) and (5)(f) (capital felony committed for pecuniary gain). In any event, the prosecutor did not inject new information into the jury's deliberations, because the jurors knew that they had returned the verdicts of which he spoke. Finally, the trial judge confirmed the prosecutor's initial statement by expressly finding in his order that subsection (5)(b) did not apply.
While we question the accuracy of the prosecutor's remarks to the effect that the jury could find the existence of an aggravating circumstance under Section 921.141(5)(c), Florida Statutes (1975), we reject any contention that this argument was prejudicial to the appellant. The trial court order, as reproduced infra, clearly and expressly found this aggravating circumstance to be inapplicable to the instant case.
Appellant's final point on appeal is an argument that the Florida death penalty statute is unconstitutional under the principles enunciated in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We adhere to the position taken in State v. Dixon, 283 So.2d 1 (Fla. 1973), and in numerous subsequent cases that the statute is in fact constitutional.[1]
Pursuant to Section 921.141(4), Florida Statutes (1975), and Florida Appellate Rule 6.16(b), we have reviewed the record in this case in its entirety. We adopt as our own the analysis of the able trial judge as to aggravating and mitigating circumstances:
"This Court finds that the facts of this case do not support the aggravating circumstances in Fla. Stat. 921.141(6),[2] subsections (a), (b) and (c) in that this capital felony was not committed by a person under sentence of imprisonment nor had the defendant previously been convicted of a capital felony nor did the defendant knowingly create a great risk of death to many person [sic].
"The Court does find, as an aggravating circumstance, that the capital felony, the murder of Lloyd Walker, was committed as a part of another dangerous and violent felony, the robbery of Diane Allen at gunpoint and in flight after committing that felony, Fla. Stat. 921.141(6)(d).
"The Court also finds, as an aggravating circumstance, that the capital felony was committed with the motive of avoiding and preventing arrest, was committed for pecuniary gain and to hinder the enforcement of laws. Fla. Stat. 921.141(6)(e)(f)(g).
* * * * * *
"Turning to mitigating circumstances, the Court finds that the defendant has no prior significant history of criminal activity. Fla. Stat. 921.141(7)(a) and therefore this fact has been considered as a mitigating circumstance.
"Under Fla. Stat. 921.141(7) subsections (b) and (f), the Court finds that the defendant was suffering from no extreme mental or emotional disturbance and that *191 his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired.
"The defendant moved for appointment of psychiatrists to examine him `... to substantiate the insanity of the Defendant at the time of the crime and subsequently thereto... .' (Prior to trial defendant's counsel moved to withdraw the motion alleging insanity). Doctors Barnard and Carrera were appointed and reported the results of their examination. Their report is devoid of any evidence of mental or emotional disturbance of the defendant. Doctor Carrera's report shows that the defendant stated that `... I just did it ... after it was all over I just felt like myself ... I wasn't scared or upset ... no change in myself . .. I wasn't angry with any one that day.' According to the report, the defendant had whiled away the hours of the day of the offense, attending a portion of a football game immediately prior to the offense. The psychiatrists both conclude that the defendant was sane at the time of the examination and at the time of the offense.
"Doctor Carrera's report has been received and read by the undersigned but has not been filed. Insofar as the Court is now aware, it has never been seen by counsel for the State or the defendant. The report recites, however, that defense counsel was present during the psychiatric examination of the defendant which forms the basis of the report. Doctor Carrera's report includes a history taken from the defendant. In this history, the defendant told Doctor Carrera that he and his accomplice discussed robbing the store. The accomplice told the defendant that the girl in the store knew the accomplice. The accomplice also said that, if they robbed the store, he didn't want anyone talking on him, so it would be necessary for them to shoot her. According to the report, the defendant's response was that it was all right with him and that it seemed like a good idea to shoot the store employee so that in that way nobody would recognize them and blame them for it.
"This fact has been considered under Fla. Stat. 921.141(7)(e). The Court rejects it as a mitigating circumstance and finds that Meeks was not under the duress or domination of his accomplice at the time he committed the capital felony.
"On the contrary, this fact supports the finding that the capital felony was committed under the aggravating circumstances hereinabove outlined with respect to avoiding arrest and to hinder the enforcement of law.
"Further, the Court finds that the victim certainly was not a participant in nor consented to the criminal conduct, Fla. Stat. 921.141[(7)](c)(e) and that the defendant, even if found to be an accomplice, did play a major part in the capital felony. Fla. Stat. 921.141(7)(d). No mitigation exists under either of these subsections.
"Finally, the age of the defendant has been considered as required by Fla. Stat. 921.141(7)(g). The defendant is 21. The report of Doctor Barnard contained his medical judgment that the defendant was of dull-normal intelligence.
"The Court finds the combination of the defendant's youthful age and his intelligence to be a mitigating factor.
* * * * * *
"Upon consideration, it was at the time of sentencing and is now, some hours later as the sentence of death is justified in writing, the inescapable conclusion of the undersigned that sufficient aggravating circumstances exist in the facts to justify the death penalty. The murder of the victim by the defendant was for the express purpose of executing the victim to prevent his identifying the defendant, so that the defendant could flee after having committed robbery at gunpoint for pecuniary gain which robbery was witnessed by the victim and to prevent the lawful arrest of the defendant and thus this conscienceless murder was designed to hinder the enforcement of laws.

*192 "The mitigating circumstances of a young age and no prior history of criminal conduct on the part of the defendant are entirely insufficient to and do not outweigh the aggravating circumstances."
Mindful of our unique role in the process by which justice is done in capital cases, we have considered the disposition of Meeks' accomplice in the instant case, Homer Hardwick. Hardwick was tried for murder some six weeks after appellant's trial. Meeks testified for the State, recalling and recounting this incident consistently with the story he told the psychiatrist at the examination to which the trial judge referred in the excerpt of the court order quoted above. Hardwick testified that Meeks compelled his participation in the crime by threatening him with a gun, that Meeks fired all shots into the bodies of Lloyd Walker and Dianne Allen, and that he himself ran from the store after Meeks fired the third shot and did not see the appellant until the next day. Hardwick was found guilty on all counts, but the jury recommended a life sentence. The circuit judge, who had tried Meeks six weeks earlier, sentenced Hardwick to life imprisonment.[3]
We are extremely sensitive to the demands of equality before the law in cases in which we must consider whether a sentence of death should be upheld. Our reading of Furman, supra, convinces us that identical crimes committed by people with similar criminal histories require identical sentences. It is this uniformity and predictability of result which Section 921.141, Florida Statutes (1975), seeks to accomplish. But there was evidence, discussed above, from which the jury in Hardwick's trial could have concluded that Meeks was the dominant figure in this criminal episode. This is a bona fide mitigating circumstance under Section 921.141(6)(d) and (e), Florida Statutes (1975). The presence of such testimony, accompanied by Hardwick's youth, sufficiently differentiates the cases of the two men so that Furman's dictates are not violated by the imposition of different penalties.
In conclusion, the aggravating and mitigating circumstances surrounding the appellant's commission of this truly senseless crime convince us that the death penalty is justified.
The judgment and sentence are affirmed.
OVERTON, C.J., ROBERTS, ADKINS, BOYD, ENGLAND and SUNDBERG, JJ., and RUDD, Circuit Court Judge, concur.
NOTES
[1] The U.S. Supreme Court reached the same conclusion in Proffitt v. Florida, ___ U.S. ___, 96 S.Ct. 2960, 49 L.Ed.2d 913, Opinion filed July 2, 1976.
[2] The trial court order refers to aggravating and mitigating circumstances as appearing under subsections (6) and (7), respectively, of § 921.141, Fla. Stat., rather than under subsections (5) and (6), respectively.
[3] We note in passing that Hardwick's conviction was recently affirmed by the First District Court of Appeal. Hardwick v. State, 335 So.2d 307, Fla. 1st DCA, opinion filed June 30, 1976.