386 So.2d 1188 (1980)
Paul Edward MAGILL, Appellant,
v.
STATE of Florida, Appellee.
No. 51699.
Supreme Court of Florida.
May 8, 1980.
As Revised On Denial of Rehearing September 8, 1980.
Michael J. Minerva, Public Defender, and Margaret Good, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Michael H. Davidson, Charles A. Stampelos and Raymond L. Marky, Asst. Attys. Gen., Tallahassee, for appellee.
*1189 ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and a sentence of death.
The defendant, Magill, seventeen years of age at the time, robbed a small store, abducted the female attendant, raped her, and then killed her. An indictment was returned on January 6, 1977, and defendant was arraigned on January 17, 1977, at which time the public defender was appointed to represent the defendant. On February 1, 1977, the court ordered an examination of defendant to determine his competency to stand trial. On March 4, 1977, the defendant filed a motion for continuance on the ground that he had not yet received the reports of the appointed psychiatrists. The reports of the psychiatrists were filed on March 8 and March 14. The defendant filed a notice of intent to rely upon the defense of insanity on March 16; on the same day he filed another motion for continuance on the ground that he had been unable to take the deposition of the examining psychiatrists. The trial began on March 21, 1977.
Defendant says the trial court committed reversible error in denying the motions for continuance. The psychiatric evaluations were performed to determine defendant's competency to stand trial. Those reports conclude the defendant was competent to stand trial and was sane at the time of the commission of the offense. The testimony of the psychiatrists would be inadmissible on the issue of guilt. In Campbell v. State, 227 So.2d 873 (Fla. 1969), we held that the proffered testimony of a psychiatrist that the defendant, though able to distinguish between right and wrong, had a mental deficiency, and might not be able to conform his acts to the requirements of law, was not relevant to the question of whether or not the defendant was legally insane under the McNaghten test. Such testimony was, therefore, inadmissible.
In criminal cases an application for a continuance is addressed to the sound judicial discretion of the trial court, and the denial of such a motion should not be reversed by an appellate court unless there has been a palpable abuse of this judicial discretion. This abuse of discretion must clearly and affirmatively appear in the record. Pittman v. State, 51 Fla. 94, 41 So. 385 (1906). There has been no showing of palpable abuse of discretion and we therefore refuse to say the trial court committed error.
Defendant next contends that during voir dire examination, the state attorney gave an erroneous explanation of the function and duties of the jury. This contention is without merit. The trial court instructed the jury as to their duties and functions, and these instructions were correct. Any misstatement by the state attorney during the voir dire examination was cured by appropriate instructions from the court.
During voir dire examination of the jury several unreported bench conferences were held. We do not approve unreported bench conferences, but under the record of this case, the defendant has failed to show reversible error.
Defendant says that the trial court committed error in excusing Juror Bonner for cause. In support of this contention defendant cites Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), where the principle is established that a prospective juror cannot be excused for cause in a capital case simply because the juror is opposed to the death penalty. However, Witherspoon also says the court may exclude a venireman whose objections to the death penalty interfere with his or her ability to follow the law in the case.
The record discloses that Juror Bonner would not vote for a conviction of first degree murder, regardless of the evidence, because of her objection to applying the death penalty to a defendant on the basis of age. It was apparent from the examination that she would be unable to follow the law because of her bias or prejudice towards inflicting the death penalty upon those under the age of twenty-one years. As Juror *1190 Bonner was properly excused, this contention of the defendant is also without merit.
During the sentencing phase of the proceedings, the defendant's attorney attempted to limit the scope of direct examination of the defendant to a time frame prior to the robbery so as to show his understanding of emotional conflicts and reasons for the robbery. Defendant says that, over repeated objections, the prosecutor was permitted to cross-examine him on his thinking and acting out what occurred beyond the robbery. Actually the prosecutor attempted to stress the aggravating circumstances during his cross-examination of defendant in the sentencing phase. In State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), we said:
Another advantage to the defendant in a post-conviction proceeding, is his right to appear and argue for mitigation. The State can cross-examine the defendant on those matters which the defendant has raised, to get to the truth of the alleged mitigating factors, but cannot go beyond them in an attempt to force the defendant to prove aggravating circumstances for the State. A defendant is protected from self-incrimination through the Constitutions of Florida and of the United States. Fla. Const., art. I, § 9, F.S.A., and U.S.Const., Amend. V. In no event, is the defendant forced to testify. However, if he does, he is protected from cross-examination which seeks to go beyond the subject matter covered on his direct testimony and extend to matters concerning possible aggravating circumstances.
The defendant raised the matter of "Paul's emotional turmoil and problems" for consideration as a mitigating circumstance. Defendant claims that the exposition of that topic was strictly limited to his mental state prior to the robbery and that, therefore, the state exceeded the proper bounds of cross-examination when the state explored defendant's mental state in regard to the rape and murder of the victim. If the defendant opens the door as to his mental state prior to and during the commission of a crime, the state, during the sentencing procedure, is free to explore that area on cross-examination. Such cross-examination may be geared toward the mental attitude of defendant for a reasonable time after the commission of the crime.
Defendant complains because he was not allowed to answer the question, "How do you feel at this time, Paul, concerning the acts that you have done?" The state of mind of a murderer during or immediately after the commission of the crime may be legitimately examined for remorse. His state of mind three or four months later, when facing the death penalty, may or may not be relevant. In any event, the record shows many instances where defendant was allowed to bring out remorse as a mitigating factor. The error if any, in not allowing defendant to once again express remorse is harmless.
We next consider the propriety of the death sentence. The record clearly shows that defendant first robbed the victim and kidnapped her while in the process of fleeing the site of the robbery. He then took the victim to a wooded area and raped her. As they were returning to the car after the rape, the victim begged that she not be injured. Defendant realized that she would be able to identify him, so he shot her three times, "twice in the head and once in the chest." Defendant reaffirmed the details of a confession while on the stand at trial, although he attempted to recant the portion of his confession where he stated that he had killed the victim to avoid identification. The jury obviously believed the confession and not the recantation. This is well within their province. Alvord v. State, 322 So.2d 533 (Fla. 1975); Ford v. State, 251 So.2d 562 (Fla.3d DCA 1971); Wilson v. State, 208 So.2d 479 (Fla.3d DCA 1968). The record shows that the victim was shot in the head and fell to the ground, after which defendant deliberately shot her twice more, once in the head and once in the chest. The chest shot was at such close range that it left powder burns. The record is clear that defendant had a cold, calculated design to effect the death of the helpless victim. This is evident from the *1191 number of times defendant shot the victim with his .44 caliber pistol, the proximity of the muzzle of the pistol to the victim's chest, and defendant's statement to the police that he shot her to avoid identification and made sure that she was dead.
In Meeks v. State, 339 So.2d 186 (Fla. 1976), the victim was killed to avoid identification. Meeks was only twenty-one years of age, Magill was nearly eighteen. Meeks robbed a convenience store immediately preceding the murder. Magill robbed a convenience store and raped the victim preceding the murder. The only significant factual difference between Meeks and the case before us is that in Meeks the defendant did not rape his victim before he murdered her. The death penalty was awarded in Meeks.
Defendant's reliance upon Halliwell v. State, 323 So.2d 557 (Fla. 1975), is not well placed. The defendant in Halliwell was involved in a love triangle which culminated in defendant's beating the husband to death after the husband had beat the wife. The motive was certainly different.
It is apparent that the trial judge used a reasoned judgment and, in the absence of sufficient mitigating circumstances, the death penalty was justified. The Court found that there were "no mitigating circumstances which outweigh the aforementioned aggravating circumstances." However, the court did not specifically list the mitigating circumstances which he may or may not have considered. Even though the trial judge may have considered some mitigating circumstances, he is charged with the further responsibility of articulating them, so as to provide this Court with the opportunity of giving a meaningful review of the sentence of death. As stated in State v. Dixon, 283 So.2d at 8:
The fourth step required by Fla. Stat. § 921.141, F.S.A., is that the trial judge justifies his sentence of death in writing, to provide the opportunity for meaningful review by this Court. Discrimination or capriciousness cannot stand where reason is required, and this is an important element added for the protection of the convicted defendant. Not only is the sentence then open to judicial review and correction, but the trial judge is required to view the issue of life or death within the framework of roles provided by the statute.
A most important safeguard is the propounding of aggravating and mitigating circumstances, which are determinative of the sentence imposed. Under the circumstances, it is necessary for us to set aside the sentence of death and remand the case to the trial judge for the purpose of making proper findings of fact and then, imposing an appropriate sentence. It is, of course, unnecessary to impanel another jury.
The judgment of conviction is affirmed. The sentence of death is vacated and the cause remanded to the trial judge for further proceedings consistent with this opinion.
It is so ordered.
BOYD, OVERTON and ALDERMAN, JJ., concur.
ENGLAND, C.J., concurs fully in the affirmation of Magill's conviction but in result only as to the vacation of Magill's sentence.