410 So.2d 147 (1982)
Charles M. VAUGHT, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 52835.
Supreme Court of Florida.
January 7, 1982.
Rehearing Denied March 15, 1982.
*148 William J. Sheppard and Stephen J. Weinbaum of the Law Offices of William J. Sheppard, Jacksonville, and Tobias Simon and Theodore L. Tripp, Jr. of the Law Offices of Tobias Simon, Miami, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of conviction of first-degree murder and robbery with a firearm. Agreeing with the recommendation of the jury, the trial court sentenced the appellant Charles Mallory Vaught to death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On February 10, 1977, in the City of Tallahassee, Garry Lee Charles and Edward LeFeavers were closing Mr. Charles' gasoline station for the night when an armed assailant arrived and demanded money. The robber wore a mask fashioned from a green wool cap with two holes cut in it for the eyes. Mr. Charles recognized the assailant and tried to pull off the mask saying, "I know you, and know where you live." After exposing the robber's face, Mr. Charles was shot five times and killed.
Lenford Coleman, appellant's next-door neighbor, testified that he and his roommate Freddie Scott owned three pistols which they had given to the appellant for safe keeping. One of the pistols was a .38 caliber Smith & Wesson revolver. On the night of the murder, the appellant went to Coleman, admitted the murder, and gave the gun back. Coleman then retrieved the other two guns from appellant's apartment. He and Scott took all three pistols and hid them near their apartment building. They later turned them over to police. Bullets recovered from the victim's body were conclusively determined to have been fired from the revolver returned to Coleman by the appellant.
The green wool cap fashioned into a mask was found in the vicinity of the crime scene, near where testimony showed the appellant parked his car before proceeding to the scene. Appellant's roommate testified that the cap was his, he discovered it missing, and he found green wool scraps in his apartment which apparently resulted from the process of cutting out holes for the eyes. Hair samples taken from the cap were shown to possibly match a sample taken from the appellant.
Katrinka Goram testified that on the night of the murder the appellant came to her and asked her to return his car to his apartment. He also requested, if anyone asked where he was, that she say that he had been in Jacksonville all that week.
A prisoner in the Leon County jail, who met the appellant there following his arrest, testified to the appellant's admission to the crime. He also stated that the appellant, offering money, sought his aid in securing an alibi witness and in seeking to have certain prosecution witnesses silenced.
We have reviewed the entire record and conclude that the evidence adduced at the trial amply supports the jury's verdicts *149 of guilty of first-degree murder and robbery with a firearm.
The appellant raises three issues in his appeal. He contends that the capital felony sentencing law cannot be applied because it purports to regulate practice and procedure in violation of the Florida Constitution and is therefore void. He contends that the trial court erred in instructing the jury on the aggravating and mitigating circumstances in that the standard instructions used do not adequately reflect the definitions of the statutory terms developed in the decisions of this Court. Finally, the appellant contends that the court erred in its consideration of aggravating and mitigating circumstances and that he should be resentenced.
In contending that the capital felony sentencing law regulates practice and procedure, appellant relies upon Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and Lee v. State, 294 So.2d 305 (Fla. 1974). The critical issue in those cases was the legality of applying Florida's new death penalty law to persons who had committed a murder before the law had taken effect. In holding that the law could be applied to such persons, the United States Supreme Court and this Court referred to the changes in the law as procedural. Those references concerned the manner in which defendants who had committed murder before the new law took effect should be sentenced. They were not meant to be used as shibboleths for deciding whether the new law violates article V, section 2(a) of the Florida Constitution by regulating the practice and procedure in the Florida courts. By delineating the circumstances in which the death penalty may be imposed, the legislature has not invaded this Court's prerogative of adopting rules of practice and procedure. We find that the provisions of section 921.141 are matters of substantive law insofar as they define those capital felonies which the legislature finds deserving of the death penalty. The appellant's contention that the statute improperly attempts to regulate practice and procedure is without merit. Smith v. State, 407 So.2d 894 (Fla. 1981); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
We come now to consideration of the issues arising in connection with the court's imposition upon appellant of a sentence of death. The jury recommended death. The trial judge made the following findings of fact:
1. The defendant, CHARLES MALLORY VAUGHT, JR., shot the victim, Garry Lee Charles, five times with a .38 caliber revolver while engaged in the commission of the robbery of Garry's Bay Station on Lake Bradford Road, Tallahassee, Leon County, Florida, on February 10, 1977.
2. The victim resisted the defendant, CHARLES MALLORY VAUGHT, JR., during the perpetration of the robbery, pulled off the defendant's mask, and stated to the defendant, "I know you and I know where you live."
The defendant, after struggling with the victim, shot the victim one time. The victim fell to the ground. The defendant then stepped over the downed and helpless victim and shot him four more times.
3. The defendant, after shooting the victim, stalked the other service station attendant, Edward Wayne Lefeavers, who had taken refuge in a nearby parked truck. The defendant gained entry to the truck and brought his gun to bear on the attendant, Edward Wayne Lefeavers. The defendant clicked the revolver at said attendant, but failed to shoot the attendant only because his five-shot revolver was empty.
4. The defendant confessed the shooting and killing of the victim to both Lenford Coleman and to Eugene Lambert Cass, witnesses for the State.
5. The defendant, in connection with his confession to Lenford Coleman, showed no remorse for killing the victim. Approximately sixteen days after the murder, the defendant stated to Coleman in a manner of bragging that he had "shot the dude (Garry Lee Charles) every place but the bottoms of his feets."

*150 6. The pathologist testified that the victim died of five .38 caliber gunshot wounds with one penetrating the heart.
7. The analysis by the Federal Bureau of Investigation regarding a comparison of hairs found on the victim's jacket and on a green mask which was used during the murder/robbery with a hair sample from the defendant's head concluded that it was only a remote possibility that the hairs on the jacket and on the mask could have come from any other person than the defendant.
8. The analysis by the Florida Department of Criminal Law Enforcement regarding a comparison of the bullets retrieved from the victim's body with the.38 caliber revolver which the defendant handed to Lenford Coleman approximately 90 minutes after the murder, concluded that the revolver which the defendant handed to Coleman fired the bullets removed from the victim's body.
9. Regarding defendant's alibi that he was in Jacksonville, Florida, during the entire week in which the murder was committed, four witnesses for the State placed the defendant in Tallahassee on the day before the murder and four witnesses for the State placed the defendant in Tallahassee on the day of the murder. Furthermore, it is the opinion of this Court that the defendant's alibi witnesses were unworthy of belief in the face of all the State's evidence.
Based upon the aforestated findings, the Court concludes as follows:
(a) That this capital felony was committed for pecuniary gain.
(b) That this capital felony was especially heinous, atrocious, and cruel.
(c) That this capital felony was committed for the purpose of avoiding or preventing a lawful arrest and/or prosecution and, a failure by this Court to impose the death penalty where the defendant has deliberately killed the victim to prevent the victim from testifying against the defendant may encourage violent criminals to dispose of witnesses without fear of the ultimate punishment of death.
(d) That this capital felony was committed while the defendant was engaged in the commission of robbery.
(e) The only mitigating circumstances were the defendant's lack of prior criminal activity and the age of the defendant at the time of the crime, and it is a
FURTHER FINDING AND CONCLUSION OF THE COURT that there is sufficient aggravating circumstances to warrant the imposition of the death penalty, and there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
The Court therefore, fully cognizant of its responsibility to the State of Florida and to the Defendant makes these findings and this judgment fairly and impartially and only after great reflection upon the facts presented and the consequence of this finding.
Appellant contends that the trial court failed to provide the jury with complete instructions on aggravating and mitigating circumstances in that the instructions did not reflect the refinements provided by the decisions of this Court. Since appellant made no objection to the instructions below, this point may not be raised on appeal. Fla.R.Crim.P. 3.390(d); McCaskill v. State, 344 So.2d 1276 (Fla. 1977). Moreover, the argument is without merit. The trial court gave the standard jury instruction on aggravating and mitigating circumstances.
Appellant contends that the trial court erred in finding both that the murder was committed in the course of a robbery and that it was committed for pecuniary gain, since both findings are based on the same feature of the criminal episode. We agree, of course, that such doubling up of aggravating circumstances both having reference to the "same aspect" of the crime is error. Provence v. State, 337 So.2d 783, 786 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Appellant's contention that this error requires that the death sentence be vacated, however, does not necessarily follow. The error *151 can be harmless if it does not interfere with the weighing process in which the judge is required to engage. Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).
Appellant contends that the trial court erred in finding that the killing was especially heinous, atrocious, and cruel. He argues that since the shooting was spontaneous and caused nearly instantaneous death, it cannot come within the meaning of this aggravating circumstance, which, under the interpretations given by this Court, focuses on the infliction of physical pain or mental anguish. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); White v. State, 403 So.2d 331 (Fla. 1981). In response the state correctly points out that the factor heinous, atrocious, or cruel has also been approved based on the fact that a killing was inflicted in a "cold and calculating" or "execution-style" fashion. See, e.g., Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976).
The finding that the capital felony was committed for the purpose of avoiding or preventing arrest and prosecution is supported by the evidence that the shooting was precipitated by the victim's announcement that he knew who his masked assailant was. The evidence showed that after the victim was shot once and fell to the ground, appellant shot him four more times to make sure he was dead and therefore unavailable to identify appellant.
Appellant contends that the trial judge erred in stating, along with his finding that the capital felony was committed to avoid or prevent arrest and prosecution, that "a failure by this Court to impose the death penalty where the defendant has deliberately killed the victim to prevent the victim from testifying against the defendant may encourage violent criminals to dispose of witnesses without fear of the ultimate punishment of death." Appellant argues that this statement is an improper recitation of a non-statutory aggravating circumstance. This contention is without merit. The quoted language was not a finding of an additional and improper aggravating circumstance.
The trial judge found that there were two mitigating circumstances: the age of the appellant at the time of the crime and the fact that he had no history of significant criminal activity. Though the trial court improperly gave double consideration to the robbery motive of the killing, citing both commission in the course of a robbery and commission for pecuniary gain, the remaining aggravating circumstances outweigh the mitigating circumstances. Hargrave v. State; Meeks v. State, 339 So.2d 186 (Fla. 1976). In both Hargrave and Meeks the defendants shot a store clerk several times to eliminate the victim as a witness to a robbery. In both cases this Court upheld the imposition of the death sentence despite each defendant's youthful age and lack of any prior, significant criminal activity. Thus the trial judge's error in doubling up the two aggravating circumstances was harmless since it did not affect the weighing process. Therefore the sentence of death was properly imposed.
We affirm the convictions of first-degree murder and robbery with a firearm and the sentence of death.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.