431 So.2d 555 (1982)
William BUSH
v.
STATE of Alabama.
3 Div. 494.
Court of Criminal Appeals of Alabama.
October 12, 1982.
Rehearing Denied November 2, 1982.
*556 George W. Cameron, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Ed Carnes, Asst. Atty. Gen., for appellee.
TYSON, Judge.
The appellant was indicted for and convicted of the capital offense of murdering Larry Dominguez, the cashier of a convenience store in Montgomery, Alabama, by shooting him with a pistol during a robbery in the first degree, in violation of Alabama Code § 13A-5-40(a)(2) (1975). After a separate hearing on aggravating and mitigating *557 circumstances, the jury returned a verdict unanimously recommending that appellant's punishment be "fixed at death."
Subsequently, the trial court weighed the aggravating and mitigating circumstances, pursuant to Alabama Code § 13A-5-47 (1975) and sentenced appellant to death. The trial court entered specific written findings in support of the death sentence concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Code of Alabama, and also each mitigating circumstance enumerated in § 13A-5-51, and certain other mitigating circumstances which were offered pursuant to § 13A-5-52.[1]
Also pursuant to Alabama Code § 13A-5-47(d) (1975), the trial court made and entered of record the following findings of fact regarding this capital offense which we hereby adopt as correct for the purpose of this opinion:
"On July 26, 1981 at approximately 3:05 a.m. the Defendant, William Bush, and Edward Pringle entered a convenience storeMajik Marton Carter Hill Road in Montgomery, Alabama. Edward Pringle has capital cases pending against him in this Circuit.
"William Bush pointed a pistol at the witness, Tony Holmes, and forced him to the rear of the store where the cashier, Larry Dominguez, was using the restroom. When Dominguez opened the bathroom door, William Bush shot both Tony Holmes and Dominguez with the pistol. Bush shot Holmes in the face and Dominguez in the chest area. Bush then walked to the front of the store and tried to get into the cash register. When Larry Dominguez stumbled out of the bathroom, William Bush shot him again, this time in the face. Larry Dominguez died from the wounds he received. Bush shot Holmes and Dominguez so that there would be no witnesses to the robbery of the convenience store. Bush took two bags of Zodiac sign tags out of the Majik Market.
"After the shootings at the Carter Hill Road convenience store, Bush and Pringle drove to another convenience store. The second convenience store was a Seven-Eleven store on Narrow Lane Road in Montgomery, Alabama. Bush bought some cigarettes from the cashier, Thomas Adams, to get him to open the cash register. Then Bush forced Adams to go to a small rooman office area behind the counter. Bush shot Adams in the head with the same pistol he had previously used to shoot Tony Holmes and Larry Dominguez. Thomas Adams died from the wound he received. Bush and Pringle took the money from the cash register at the Seven-Eleven Store." (R. 682-683).

I
The appellant asserts that his demurrer to the indictment should have been granted because the indictment failed to aver the "time" of the offense. Appellant argues on this appeal, as he did by way of demurrer, that in the time period between the respective dates of the United States Supreme Court decision in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) and the Alabama Supreme Court decision in Beck v. State, 396 So.2d 645 (Ala.1980), June 20, 1980 and December 19, 1980, there was no statute or other law providing for the death penalty in Alabama. The appellant contends that since the time of the offense is not averred in the indictment the offense could have "happened at a time between June 20, 1980 and December 19, 1980," a time period when in appellant's estimation there was no death penalty provision in this state. (R. 667). We disagree.
The essential premise of appellant's argument, that Alabama had no law providing for capital punishment for offenses committed in the interval between the United States Supreme Court decision in Beck v. Alabama, supra, and the subsequent decision by the Alabama Supreme Court in *558 Beck v. State, supra, is faulty. This is so for two reasons:
First, the United States Supreme Court opinion in Beck v. Alabama, supra, did not invalidate Alabama's capital felony statute in its entirety, but simply struck down as unconstitutional that part of the statute which did not permit the jury to consider a verdict of guilt of "a lesser included offense" when the evidence would have supported such a verdict. The Alabama Supreme Court in Beck v. State, supra, judicially severed the preclusion clause which contained this, from the statute in order that the statute might comport with constitutional requirements. Thus, the changes in the statutes which were wrought by Beck v. Alabama, supra, and Beck v. State, supra, were procedural in nature and not substantive, such that Alabama was left without a death penalty provision for capital offenses committed in the interim period referred to by appellant.
Secondly, in the recent case of Percy Leo Dobard v. State, [Ms. 2 Div. 305, June 29, 1982] (Ala.Cr.App.1982), this court affirmed the death sentence of a defendant convicted of committing a capital offense which occurred on June 21, 1980, one day after the United States Supreme Court decision in Beck v. Alabama, supra. Thus, it was recognized in Dobard, supra, albeit tacitly, that Alabama did have a death penalty law in full force and effect for capital felonies committed during the period in question. Therefore, appellant's contention that the capital offense in the present case could have been committed during a time when there was no law providing for the death penalty in Alabama is unfounded, and without legal merit.
Moreover, the general rule, and the rule that is controlling in the instant case, is that it is not necessary to state in an indictment the precise time at which the offense was committed. Kelley v. State, 409 So.2d 909, 912 (Ala.Cr.App.1981); Shiflett v. State, 37 Ala.App. 300, 67 So.2d 284 (1953); Alabama Code § 15-8-30 (1975). We find none of the exceptions to the general rule applicable to appellant's argument.
In Deep v. State, 414 So.2d 141, 147 (Ala. Cr.App.1982), this court reiterated what Judge Harris so definitively stated in Summers v. State, 348 So.2d 1126 (Ala.Cr.App.), cert. denied, 348 So.2d 1136 (Ala.1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978) as follows:
"The constitutional right of an accused to demand the nature and cause of the accusation against him is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense.
"An indictment should be specific in its averments in four prime aspects to insure this guaranty: (a) to identify the accusation lest the accused should be tried for an offense different from that intended by the grand jury; (b) to enable the defendant to prepare for his defense; (c) that the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy for the same offense, and (d) to enable the Court, after conviction, to pronounce judgment on the record.
"The indictment in this case is couched in language so clear that any person of common understanding would know that the crime of robbery was charged against appellant."
Despite appellant's allegation that the time of the offense should have been averred, a plain reading of the indictment demonstrates that it is "couched in language so clear that any person of common understanding would know" that the appellant was charged with committing the capital felony of murder during a robbery in the first degree or attempt thereof.
Having reviewed all the circumstances involved, we have determined that the trial court properly overruled the demurrer on the grounds alleged therein.

*559 II
There is no requirement under Alabama's new capital felony statute[2] that the jury make specific findings as to the existence of aggravating circumstances during the sentencing phase of the proceedings. The jury's verdict whether to sentence a defendant to death or to life without parole is advisory only. Alabama Code § 13A-5-46 (1975).
Any such contention that the jury should make specific findings enumerating the aggravating circumstances it found to exist was foreclosed by Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) which upheld the Florida statute and its advisory verdict provisions, which also do not require the verdict to specify the aggravating circumstances relied upon by the jury. It is sufficient that the trial court, which is in no way bound by the jury's recommendation concerning sentence,[3] is required to enter specific written findings concerning the existence or nonexistence of each aggravating circumstance.[4]

III
Appellant's final allegation of error is that under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) the State was required to disclose that one of the police officers who took his confession had had a complaint lodged against him alleging brutality[5] in an unrelated case by one Neal Martin, a nine-time convicted felon. This issue was raised by appellant for the first time in his motion for new trial. The trial court, after conducting a full evidentiary hearing and considering the totality of the circumstances in light of United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), denied appellant's motion. It should be noted that only hearsay allegations were forthcoming at the hearing in support of the motion. There was no demonstrable evidence presented that Martin had actually been mistreated in the earlier, unrelated case. In our opinion, the trial court's ruling on appellant's motion for new trial was in all respects correct.
We do not believe that the information sought, even if it had been brought to appellant's attention prior to trial, would have been "material" to appellant's case in any constitutional sense. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish `materiality' in the constitutional sense." Agurs, 427 U.S., at 109-110, 96 S.Ct., at 2400. The prosecutor does not have a constitutional duty to deliver his entire file to defense counsel. "If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice." Agurs, 427 U.S., at 109, 96 S.Ct., at 2400.
Furthermore, assuming arguendo that the information sought by appellant was otherwise admissible, appellant's pretrial general request for "all matters called for and required by Brady" is not significantly different from those cases where no request at all has been made. A general request for "all Brady material" gives the prosecutor *560 no better notice than if no request is made. "If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor." Agurs, 427 U.S., at 107, 96 S.Ct., at 2399.
Where only a general request is made under Brady, the nondisclosure of material evidence does not result in automatic error requiring the trial court to order a new trial every time he is unable to characterize a nondisclosure as harmless under the harmless-error standard. As the Supreme Court held in Agurs, 427 U.S., at 112-113, 96 S.Ct., at 2401-2402:
"The proper standard of materiality must reflect our overriding concern with the justice of finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." (Emphasis added).
Thus, even if the naked allegations that were made against the police officer in Martin's unrelated case were somehow considered to be material to this case, which we do not believe them to be, evaluating that omission in the context of the entire record, we find that the evidence of appellant's guilt is overwhelming. Considering the totality of the circumstances here involved, there is no reasonable doubt concerning appellant's guilt. The jury's verdict is well supported. The trial court was, therefore, correct in determining there was no justification for a new trial in this cause.

IV
In addition to reviewing this case for any error involving the conviction, this court is also statutorily required to review the propriety of the death sentence. Alabama Code § 13A-5-53 (1975). Upon review of the sentencing proceedings, we have found no error adversely affecting appellant's constitutional rights. The trial court's findings concerning the aggravating and mitigating circumstances are fully supported by the evidence. We also determine that the "sentence of death" is proper punishment in this case.
Referring to Appendix A, which is attached to this opinion, the trial court found aggravating circumstances codified at Alabama Code § 13A-5-49(2), (4) and (8) (1975). As stated above, these findings were proper.
Robbery, for which appellant was previously convicted in 1970, is by definition a felony involving the use or threat of violence to the person. Peagler v. State, 353 So.2d 59, 60 (Ala.Cr.App.1977).
Secondly, the aggravating circumstances specified in § 13A-5-49(4) "shall be found and considered in determining sentence in every case in which a defendant is convicted of the capital offenses defined in subdivisions (1) through (4) of subsection (a) of § 13A-5-40." Alabama Code § 13A-5-50 (1975).
And thirdly, for the reasons set out by the trial court, this capital offense was especially heinous, atrocious or cruel when compared to other capital offenses. Execution-type slayings evincing a cold, calculated design to kill, fall into the category of heinous, atrocious or cruel. Vaught v. State, 410 So.2d 147 (Fla.1982); Combs v. State, 403 So.2d 418 (Fla.1981); Armstrong v. State, 399 So.2d 953 (Fla.1981); Alvord v. State, 322 So.2d 533 (Fla.1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). We recognize that an instantaneous death caused by gunfire is not ordinarily a heinous killing. Odom v. State, 403 So.2d 936 (Fla.1981). However, when a defendant deliberately shoots a victim in the head in a calculated fashion to avoid later identification, *561 after the victim has already been rendered helpless by gunshots to the chest, such "extremely wicked or shockingly evil" actions may be characterized as especially heinous, atrocious, or cruel. Hargrave v. State, 366 So.2d 1, 5 (Fla.1978).
Comporting with the mandates outlined in Alabama Code § 13A-5-53(b) and (c) (1975) we have determined:
(1) That the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor;
(2) That after an independent weighing of the aggravating and mitigating circumstances at this appellate level, death is the proper sentence; and
(3) That the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant.
In conclusion, we have answered each issue raised by appellant on this appeal. In addition, we have searched the entire record for plain error, as required by state law ARAP, Rule 45A. We find no error that has adversely affected appellant's substantial rights. The trial court's judgment of conviction sentencing appellant to death is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.

APPENDIX A
SPECIFIC FINDINGS CONCERNING THE EXISTENCE OR NONEXISTENCE OF EACH AGGRAVATING CIRCUMSTANCE ENUMERATED IN SECTION 13, ACT NO. 81-178; AND SPECIFIC FINDINGS AS TO THE EXISTENCE OR NONEXISTENCE OF EACH MITIGATING CIRCUMSTANCE WHETHER ENUMERATED IN SECTION 13, ACT NO. 81-178 OR OTHERWISE PRESENTED PURSUANT TO SECTION 14, ACT NO. 81-178, SUPRA.

ENUMERATED AGGRAVATING CIRCUMSTANCES
The capital offense was not committed by a person under sentence of imprisonment.
The Defendant was previously convicted of the offense of robbery in March, 1970. The presentence report also shows that in 1976 Defendant was convicted of violating the Federal Firearms Act. While the Defendant was on the stand during the instant trial, it was shown that the Federal Firearms Act violation involved a sawed-off shotgun.
The instant capital offense involved three victims. This offense is not considered by the Court to invoke the aggravating circumstance set forth in Section 11(c), Act No. 81-178, involving "a great risk of death to many persons."
The capital offense was committed while the Defendant was engaged in or was an accomplice in the commission of a robbery.
Under the evidence presented the Court does not find or consider that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody within the purview of Section 11(e), Act No. 81-178.
Under the evidence presented, the Court does not find or consider that the capital offense was committed for pecuniary gain within the purview of Section 11(f), Act No. 81-178, supra.
The Court does not find or consider under the evidence presented that the capital offense was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws within the purview of Section 11(g), Act No. 81-178, supra.
The Court does find from the evidence presented at trial that the capital offense was especially heinous, atrocious or cruel compared to other capital offenses. This finding is based upon the evidence of the execution type slaying here involved, coupled with the shooting of Larry Dominguez after this victim had already been shot and was stumbling or staggering in the store area. The evidence shows that the murder was committed so that the Defendant could eliminate an eyewitness to the robbery.
*562 The shooting of Tony Holmes in the face as part of the robbery and the shooting of Thomas Adams in the head, as part of the same criminal episode, emphasize and underscore the heinous, atrocious and cruel nature of the capital offense. The conclusion of the Court as to the heinous, atrocious or cruel nature of the offense is made after a careful review of all of the evidence and after considering the totality of all of the circumstances of this case.

MITIGATING CIRCUMSTANCES ENUMERATED AND OTHERWISE PRESENTED
The evidence before the Court establishes that the Defendant does have a significant history of prior criminal activity, including a robbery conviction and a conviction for violation of the Federal Firearms Act involving a sawed-off shotgun. There is also evidence of a conviction for grand larceny. The capital offense now before the Court is the Defendant's fourth felony conviction.
The Defendant contends in his written statement that he was under the influence of narcotics at the time of the capital offense. The Defendant denied such influence at trial.
The preponderance of the evidence does not show that Defendant was under the influence of extreme mental or emotional disturbance at the time of the capital offense.
The preponderance of the evidence establishes that the victim, Larry Dominguez, was not a participant in the Defendant's conduct, and the preponderance of the evidence further establishes that the victim did not consent to the Defendant's conduct.
The evidence establishes that the Defendant was a major participant in the capital offense and that the shootings were done by him. The evidence establishes that he shot the victims, Dominguez, Adams and Holmes.
The preponderance of the evidence establishes that the Defendant was not under extreme duress at the time of the capital offense.
The preponderance of the evidence further establishes that the Defendant was not under the substantial domination of another person.
The Defendant himself shot the three victims involved. Bush himself took the property from the Majik Market.
In addition, the Defendant, William Bush, carefully saw to it that Thomas Adams, the victim at the Seven-Eleven Store, opened the cash register before shooting him.
The preponderance of the evidence establishes that the Defendant did have the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law.
The preponderance of the evidence establishes that this capacity was not impaired.
In the Court's judgment, from the preponderance of the evidence presented, the Defendant, William Bush, knew full well what he was doing and that what he was doing was wrong. He stated to a witness that he shot the victims so that there would be no eyewitnesses to his criminality.
The evidence establishes that the Defendant was thirty one years of age at the time of the capital offense.
In addition to the above enumerated mitigating circumstances the Defendant, at the sentence hearing conducted by the Court, was given the opportunity to present any other evidence of mitigating circumstances and to make any statement of mitigating circumstances. The Defendant, through counsel, asked the Court to consider as a mitigating circumstance the fact that William Bush has been involved with the law since 1965 or since he was some fifteen years of age. Defendant, William Bush, was incarcerated in the Mt. Meigs Juvenile Facility in 1965. Counsel for the Defendant states in substance that the system has contributed to the present problems of the Defendant, William Bush. The Defendant was given a ten year penitentiary sentence in 1969 for robbery and received three years in the Federal penitentiary in 1976 for violation of the Federal Firearms Act. Defendant received another three year sentence in 1978 for grand larceny.
*563 The Defendant himself stated to the Court when given an opportunity to make any statement that he so desired, that he is not guilty and that there was an error in the trial.

CONCLUSION
All of the proper evidence having been received, the arguments given and statements made, the Court proceeds with its task of weighing the aggravating and mitigating circumstances and balancing these circumstances against each other.
The Court has not merely or mechanically tallied the items for or against the Defendant. The Court has weighed each individual aggravating circumstance as it applies to William Bush individually, and the Court has weighed such aggravating circumstances collectively. The Court has weighed each individual mitigating circumstance as it applies to William Bush individually, and has weighed the mitigating circumstances collectively. The consideration given by the Court has been specifically directed to William Bush as an individual and to the instant charge against him.
It is the conclusion of this Court that the aggravating circumstances overwhelmingly outweigh the mitigating circumstances. Accordingly, the Court accepts the recommendation of the jury that the penalty of death be imposed upon William Bush.
Formal sentencing be and is hereby set for 10:00 a.m., December 3, 1981.
DONE this the 30th day of November, 1981.

ON APPLICATION FOR REHEARING
TYSON, Judge.
Stipulation as to penalty in co-defendant Pringle's case filed and considered; request for facts denied; application overruled. No opinion.
All Judges concur.
NOTES
[1] The trial court's determination of sentence, dated November 30, 1981, is hereto made a part hereof and attached as Appendix A. (Volume 4, R. 683-687).
[2] Alabama Code §§ 13A-5-39 through 13A-5-59 (1975).
[3] Alabama Code § 13A-5-47(e) (1975).
[4] Alabama Code § 13A-5-47(d) (1975).
[5] Prior to trial and during trial, appellant attempted to have his confession suppressed, alleging that he had been coerced into confessing by the police officers who he claimed had beaten and intimidated him.

The overwhelming weight of the evidence, however, refutes appellant's allegations. Testimony by the police officers who questioned appellant demonstrates that appellant intelligently and voluntarily made his confessions free from any coercion or intimidation. Both the Miranda and voluntariness predicates were fully determined and established before appellant's confessions were admitted into evidence.
Thus, in line with Burks v. State, 353 So.2d 539 (Ala.Cr.App.1977) and authority cited therein, appellant's confessions were in fact properly admitted. The issue of appellant's credibility in this matter was resolved by the jury.