No. 81–5908.   ZEIGLER v. FLORIDA.   Sup. Ct. Fla.   Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Petitioner seeks review of the State Supreme Court's decision upholding his murder conviction and death sentence. He argues that his conviction and death sentence should be set aside because they were based in part on evidence obtained in flagrant violation of his Fourth Amendment rights. He objects to the State Supreme Court's holding that, by calling the Chief of Police for assistance, he consented to a broad-ranging 12-day search of his furniture store.   Because I believe that this petition raises serious Fourth Amendment claims[1] and offers an opportunity for this Court to clarify the

---

[1] Petitioner also objects that his alleged consent to a search of his home was not voluntary.   The morning after the crimes, police asked to see peti-

standards for consent to search under *Schneckloth* v. *Bustamonte*, 412 U. S. 218 (1973), I dissent from the denial of certiorari.[2]

On December 24, 1975, four persons were killed at a furniture store owned by petitioner. Petitioner's wife, her parents, and another person had been shot to death, and petitioner had been shot in the abdomen and was seriously wounded. That night, shortly after the shootings, petitioner called the local Police Chief, a personal friend of petitioner, and requested immediate assistance. The Police Chief testified: "He told me that he had been shot. I said, what happened. He said please come help me, hurry." In response to this call, the police entered the store, found petitioner, who was bleeding badly, and rushed him to the hospital. The police found four bodies, searched for the killer, and secured the building.

Later that night, a local detective arrived to direct the investigation. The store was searched again that night and repeatedly over the next *12 days*. No effort was made to ob-

---

tioner in the hospital, but were refused admission because of his physical and emotional condition. Petitioner had come out of surgery only six hours earlier, was under the influence of anesthesia, and had recently been given morphine for pain. The officers drafted a consent form and asked two nurses to obtain petitioner's signature. The nurses awoke petitioner and told him that the police would like to search his home and would like him to sign the form, which they read to him. Although the nurses testified that he was coherent when he signed the form, petitioner stated that he had no recollection of signing.

As a result of this purported consent, the police searched petitioner's home and seized numerous items of evidence that were introduced at trial. These circumstances—the extraction of consent from a recuperating and drugged patient in a hospital bed—demand the most careful scrutiny before the consent may be deemed voluntary. If the petition for certiorari were granted, I would address this issue as well.

[2] Because I continue to believe that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth Amendment, I would also grant the petition for certiorari in this case and vacate the judgment below insofar as it leaves undisturbed the death sentence.

tain a warrant until January 6, 1976. On December 26, police made a warrantless entry into petitioner's office, which was separated from the area where the victims were found, breaking two locks in the process. They went through petitioner's personal papers, checkbooks, and corporate records, and seized several documents. In searching through one of petitioner's desks, police found an insurance policy that petitioner had taken out on his wife's life. A second policy was seized in a search the next day. The two policies were introduced at trial to support the State's theory that petitioner had a pecuniary motive for killing his wife. On January 2, police searched the store yet again. They entered a backroom separated from the area in which the victims had been found, searched the inside of a closed storage cabinet, and seized a large amount of damaging evidence that was introduced at trial.

The detective testified that in conducting these warrantless searches, he relied on a so-called crime scene exception to the warrant requirement. He specifically stated that he did *not* have petitioner's consent to all of the searches. The trial court upheld the searches under this crime scene rationale. Although the State Supreme Court recognized that a crime scene exception is inconsistent with *Mincey* v. *Arizona*, 437 U. S. 385 (1978), it nevertheless upheld the searches, reasoning that the police were at the store at the "invitation" of petitioner. 402 So. 2d 365, 372 (Fla. 1981).[3]

The decision below stretches the consent exception to the warrant requirement beyond recognition. Particularly when the defendant's life hangs in the balance, courts should be careful that convictions are not based on illegally obtained evidence. Here, the conclusion that a seriously wounded de-

---

[3] The State contends that petitioner shot himself and called the police as part of a deliberate scheme to pin the blame on another. This contention is irrelevant to the scope of petitioner's consent. Whether or not the call for help was self-serving, the question remains whether it can reasonably be construed as a consent to a search unlimited in time and location.

fendant who requests police aid thereby consents to an unlimited 12-day search of his business premises ignores the relevant context of the consent—the need for immediate medical assistance—and amounts to a rule that a cry for help waives all Fourth Amendment protection. I would set the case for plenary argument.