[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2003
THOMAS K. KAHN
CLERK

No. 00-14573

D. C. Docket Nos. 82-01034-3CV-J-20
and 86-00333-CV-J

WILLIAM THOMAS ZEIGLER, JR.,

Petitioner-Appellant,

versus

JAMES CROSBY, Secretary,
Florida Department of Corrections,
DENNIS O'NEILL, Superintendent,
Union Correctional Institution,
CHARLIE CRIST, Attorney General
of the State of Florida,
STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 19, 2003)

Before EDMONDSON, Chief Judge, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

William Thomas Zeigler, Jr. appeals the denial of his petition for a writ of habeas corpus. We affirm.

BACKGROUND

In 1976, Zeigler was convicted of 2 counts of first degree murder and 2 counts of second degree murder. The historical facts of the murders are set forth in the Florida Supreme Court's opinion on direct appeal. Zeigler v. State, 402 So.2d 365 (Fla. 1981). The jury recommended a sentence of life imprisonment. But, the trial court sentenced Zeigler to death. The Florida Supreme Court affirmed, 402 So.2d at 377, and the United States Supreme Court denied certiorari. Zeigler v. Florida, 102 S.Ct. 1739 (1982).

In the 27 years after his conviction, Zeigler has filed a variety of petitions for collateral review in both state and federal court. In 1982, he filed the first petition for a writ of habeas corpus in federal court. Because some of Zeigler's claims had not been exhausted, the district court granted a continuance to allow Zeigler to exhaust his state remedies. Zeigler then filed a motion to vacate his sentence in accord with Florida Rule 3.850. The state court denied Zeigler's

2

petition, and the Supreme Court of Florida affirmed. <u>Zeigler v. State</u>, 452 So.2d 537 (Fla. 1984) (affirming denial of eighteen claims and remanding one claim); <u>Zeigler v. State</u>, 473 So.2d 203 (Fla. 1985) (affirming denial of remaining claim after remand).

The district court then ordered Zeigler to file an amended habeas petition. Zeigler filed a habeas corpus "checklist" which the district court treated as an amended habeas petition. The district court denied the petition. After the time for filing a notice of appeal expired, Zeigler's execution was set for May 1986. Zeigler then filed a Rule 60(b) motion for relief from judgment, a motion to file an amended habeas petition, and a second federal habeas petition. This second habeas petition raised Zeigler's original claims and a claim of ineffective assistance of counsel for the failure to file a timely notice of appeal from the denial of his first amended federal habeas petition. The district court denied the motions and the petition. Zeigler appealed.

While Zeigler's appeal was pending in federal court, he filed a second Rule 3.850 motion in state court which was denied. In November 1986, we vacated the district court's denial of Zeigler's motions and habeas petition and remanded the case to the district court with instructions to allow Zeigler to file a new amended petition limited to claims "on which exhaustion was completed or initiated not

later than January 14, 1983." Zeigler v. Wainwright, 805 F.2d 1422, 1426 (11th Cir. 1986). In May 1987, Zeigler filed his amended habeas petition in the district court.

Before Zeigler's amended petition was decided by the district court, Zeigler filed a habeas petition in the Florida Supreme Court.[1] In April 1988, the Florida Supreme Court vacated the death sentence. Zeigler v. Dugger, 524 So.2d 419, 421 (Fla. 1988). Zeigler's second federal habeas petition was then dismissed without prejudice.

In August 1989, Zeigler was re-sentenced to death. Zeigler appealed his sentence; and, while his direct appeal was pending, he filed a Rule 3.850 motion. In April 1991, the Florida Supreme Court ruled on Zeigler's direct appeal, affirming the death sentence. Zeigler v. State, 580 So.2d 127, 131 (Fla. 1991). The United States Supreme Court again denied certiorari. Zeigler v. Florida, 112 S.Ct. 390 (1991). Zeigler then amended his Rule 3.850 motion in October 1989 and again in March 1992. The amended motion was denied, and the denial was affirmed by the Florida Supreme Court. Zeigler v. State, 632 So.2d 48 (Fla. 1993).

---

[1] Florida law allows for two kinds of post-conviction proceedings. A prisoner can file a motion to vacate sentence under Rule 3.850 of the Florida Rules of Criminal Procedure. A prisoner may also directly petition the Florida Supreme Court for a writ of habeas corpus.

After his amended Rule 3.850 motion was denied, Zeigler filed another 3.850 motion in March 1994. This fourth motion was denied in June 1994. In October 1994, Zeigler filed a habeas petition in the Florida Supreme Court which was summarily denied. After denying the habeas petition, the Florida Supreme Court affirmed the denial of Zeigler's March 1994 -- that is, his fourth -- 3.850 motion. Zeigler v. State, 654 So.2d 1162, 1165 (Fla. 1995).

On 21 August 1995, Zeigler filed this habeas petition -- his third -- in the district court. Zeigler's petition raised many claims. On 10 July 2000, the district court denied relief on all claims. On 28 November 2001, we granted a certificate of appealabiltiy (COA) covering 11 of Zeigler's claims.[2]

DISCUSSION

---

[2] After oral argument, Zeigler filed a motion to reconsider our denial of a COA on ground IV.B of his petition. Zeigler argues that, under the Supreme Court's decision in Miller-El v. Cockrell, 123 S.Ct. 1029 (2003), a COA should have been granted for this claim (the claim alleges that a juror was improperly prescribed Valium during the deliberations). In Miller-El, the Supreme Court said that a COA should be granted "only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" 123 S.Ct. at 1039. Under this standard "a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.''" Id. (quoting Slack v. McDaniel, 120 S.Ct. 1595, 1599 (2000))(alteration in original). This standard is not a new standard. Id. We used this standard when issuing our COA, and we see no reason to expand our COA to cover additional claims. The motion is denied.

5

Because Zeigler's habeas petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), his petition is governed by the pre-1996 version of 28 U.S.C. § 2254. Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997). Under pre-AEDPA law, we review the denial of a habeas petition and the district court's legal conclusions de novo. Johnson v. Alabama, 256 F.3d 1156, 1169 (11th Cir. 2001). We accept the district court's findings of fact unless they are clearly erroneous. Id. The state court's findings of fact are entitled to a presumption of correctness. To overcome this presumption, the petitioner must show with clear and convincing evidence that the state court's finding was not "fairly supported by the record." Id. (citation omitted).

We must also defer to the state court's findings of procedural defaults. "It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' 'or a fundamental miscarriage of justice.'" Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000). A claim is also procedurally defaulted if the petitioner fails to raise the claim in state court and "it is clear from state law that any future attempts at exhaustion would be futile." Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999).

6

For the purposes of discussion, we divide Zeigler's eleven claims into four categories and then discuss each category of claims. Zeigler's first three claims deal with prosecutorial misconduct. His next three claims deal with allegations of juror misconduct. His seventh claim is an ineffective assistance of counsel claim. His last four claims deal with alleged errors in his re-sentencing.

A. The Prosecutorial Misconduct Claims

Zeigler raises three claims based on the contention that the prosecutor failed to disclose potentially exculpatory evidence as required by Brady v. Maryland, 83 S.Ct. 1194 (1963). Stated specifically, Zeigler claims that (1) the prosecutor failed to disclose a tape-recorded interview with Jon Jellison, (The Jellison tape); (2) the prosecutor failed to disclose inconsistent statements of prosecution witnesses; and (3) even if Zeigler is not entitled to relief on either Brady claim, he is entitled to relief based on the cumulative effect of these claims. The district court concluded that these claims were procedurally barred.

The district court saw a procedural bar because Zeigler did not bring these claims until 1987. Zeigler concedes this timing but says that he did not discover

the claim until that time. He argues that cause and prejudice exist to overcome the procedural bar under <u>Wainwright v. Sykes</u>, 97 S.Ct. 2497, 2503-07 (1977).[3]

The Supreme Court has said "that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials,' made compliance impracticable, would constitute cause under this standard." <u>Murray v. Carrier</u>, 106 S.Ct. 2639, 2645 (1986) (citations omitted). Zeigler's lawyer asked to inspect the state's files in 1982. In his affidavit, this lawyer avers that, although the state then indicated that they had provided him access to all of the files, the information pertinent to this claim was not included. We will assume for the sake of discussion (but do not decide) that the state's failure to produce the pertinent "exculpatory" information is sufficient cause. We turn to the issue of prejudice.

To show prejudice, Zeigler must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1261 (11th Cir. 1992). Zeigler

---

[3] Zeigler also argues that the state inconsistently applies the statute of limitations for Rule 3.850 motions by routinely granting exceptions to death row inmates. He cites to <u>State v. Kokal</u>, 562 So. 2d 324 (Fla. 1990); <u>Ventura v. State</u>, 673 So.2d 479, 481 (Fla. 1996); <u>Lopez v. Singletary</u>, 634 So.2d 1054, 1057-58 (Fla. 1993); <u>Jennings v. State</u>, 583 So.2d 316, 319 (Fla. 1991); <u>Engle v. Dugger</u>, 576 So.2d 696, 704 (Fla. 1991) and <u>Provenzano v. Dugger</u>, 561 So.2d 541, 547 (Fla. 1990). These cases do not demonstrate inconsistent application of the statute of limitations. The inmates who received extensions were not clearly comparable to Zeigler (who did not seek an extension until after the limitations period had expired).

would have to demonstrate "'that there is a reasonable probability that the jury would have returned a different verdict' had the [exculpatory evidence] been disclosed." Mincey, 206 F.3d at 1139 (citation omitted).

In the Jellison tape, Jellison said he heard a shot fired after a police car was on the scene. While this testimony conflicts with the state's theory (that Zeigler killed the victims and shot himself before calling the police), it also contradicts the entire theory of the defense (that all persons were shot during an attempted robbery before the police arrived). The prosecution's failure to produce this evidence before trial cannot be said to have unfairly prejudiced the defense. The Jellison tape does not create a reasonable probability of a different verdict.

About Zeigler's claim that the prosecutor failed to disclose prior inconsistent statements, this circumstance also did not substantially damage Zeigler's defense.[4] These inconsistent statements did not "actually and

---

[4] The inconsistent statements were made by two witnesses, Felton Thomas and Edward Williams and were contained in the interview notes of Detective Frye. Frye's notes indicate that Thomas said he fired a gun with Zeigler in an orange grove and that the gun jammed after one round and that he handed a gun to Charles Mays (one of the victims) while in Zeigler's car. (The prosecution argued that Zeigler had taken Thomas and Mays shooting in an orange grove to get their fingerprints on the murder weapons in an attempt to frame them for the crime. Zeigler denied taking Thomas and Mays to the orange grove and testified "I have never seen Felton Thomas before in my life . . . ."). At trial, Thomas did not speak about the jamming incident and said that Mays had taken the gun from a bag given to him by Zeigler. Frye's notes indicate that Williams said he saw blood on Zeigler's shirt when Zeigler grabbed him and tried to get him to reenter the store. At trial, Williams testified that he saw the blood when Williams and Zeigler were at opposite sides of a box at the rear of the store. Zeigler also points to a taped interview with a third witness, Frank Smith, that, he claims, likely contained impeachment evidence. The tape was lost, and Zeigler claims that this fact supports an

9

substantially disadvantage[] his defense so that [Zeigler] was denied fundamental fairness." McCoy, 953 F.2d at 1261. These statements concern minor matters, do not call into question the state's theory of the case, and are inconsistent with Zeigler's theory. While Ziegler could have used these statements in an effort to impeach the witnesses, Zeigler impeached these witnesses on other matters. Zeigler has not shown the prejudice necessary to defeat the procedural bar.

Zeigler's third claim is based on the combined effect of the failure to disclose the Jellison interview and the failure to disclose the prior inconsistent statements. They still fall short of establishing prejudice. Taken together these items might allow an inference of the police attempting to influence testimony (in the Jellison tape the investigator said he did not want to interview other family members "unless, you know, you all get together and decide you heard those gunshots before you saw the police car and in that case, we'd [sic] give you a free trip back to Florida." The inconsistent statements could be seen as changed stories). But, the impact of this inference is weak. For example, the fact remains

---

inference that it contained helpful information. While evidence lost or destroyed in bad faith will support such an inference, Zeigler has not shown bad faith. See James v. Singletary, 957 F.2d 1562, 1568 n.4 (11th Cir. 1992) ("Destruction of potentially exculpatory evidence violates Brady only if the police acted in bad faith"), see also Bashir v. Amtrack, 119 F.3d 929, 931 (11th Cir. 1997).

that the Jellison tape is otherwise inconsistent with Zeigler's defense. We cannot say that Zeigler has shown a reasonable probability of a different verdict.

None of the prosecutorial misconduct claims are sufficiently prejudicial to overcome the procedural default. The district court did not err when it denied relief on these claims.

B. The Juror Misconduct Claims

Zeigler claims that his Sixth Amendment right to a fair trial was violated by rampant juror misconduct including (1) juror bias, prejudice, coercion and alcohol consumption; (2) improper outside influence; and (3) an unlawful compromise verdict. The district court denied all three claims as procedurally barred.

The district court concluded that Zeigler's first two juror misconduct claims were procedurally barred because they were not presented to the state courts. This conclusion was based, in part, on the Florida Supreme Court's finding of a procedural bar when it ruled on the appeal of Zeigler's motion for post conviction relief. Zeigler points out that the Florida Supreme Court disposed of these claims by saying that they "were or should have been raised on appeal." When a state court relies on this point, the procedural-default federal issue hinges on whether

11

the constitutional claim was actually presented on direct appeal. See Smith v. Dugger, 840 F.2d 787, 791 (11th Cir. 1988) ("If in fact the [claim] was raised on direct appeal, it was necessarily ruled on . . . and although foreclosed from state collateral attack, it would be available in the federal case as an exhausted claim. If it could have been raised, but was not, it would be barred from any state collateral review, and likewise barred from federal review.")

Zeigler argues he raised these claims on direct appeal of his convictions. Zeigler -- in his direct appeal -- argued that the district court erred by not allowing him to interview the jurors for potential misconduct. The direct appeal incorporated by reference Zeigler's response to the state's objections to his motion to interview jurors. This response briefly discusses allegations of alcohol use, of contact between a juror and her minister and of the jury foreman having made his decision before the close of evidence.

To present a federal constitutional claim properly in state court, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 115

12

S.Ct. 887, 888 (1995); see also, Isaacs v. Head, 300 F.3d 1232, 1254 (11th Cir. 2002) (Seriatim Opinions) (Opinion of Anderson J.). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." Anderson v. Harless, 103 S.Ct. 276, 277 (1982) (citations omitted). "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." Henry v. Dept. of Corr., 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting Gray v. Netherland, 116 S.Ct. 2074, 2081 (1996)).

We agree with the district court that the incorporation by reference in the direct appeal was insufficient to raise these specific federal claims in state court. Neither the direct appeal, nor the response to the state's objections to the motion to interview jurors, made reference to the federal constitutional issues raised here.[5]

_____

[5] The discussion of the allegation about the jury foreman prejudging the case, contained in the document incorporated by reference, included this sentence: "The fundamental question is whether the Defendant was accorded his constitutional right to a fair trial." And Part X, which dealt with possible juror misconduct, of petitioner's direct appeal brief (the part into which the document was incorporated by reference) contained these words: "Appellant was denied due process and a fair trial . . . ." Especially in the context of the documents in which it appears, this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. These sentences were insufficient to present fairly to the state court the federal constitutional issue now before us. The only cases cited in the discussion of this issue are Florida Supreme Court cases that make no mention of the United States Constitution and cite no federal cases. No federal cases or constitutional provisions are cited anywhere in the documents incorporated by reference. If Zeigler -- who had counsel -- was intending to present a claim under the United States Constitution, these sentences in Part X and in a multi-page document incorporated by reference into a 100-page brief

13

None of the cases cited in either the direct appeal or the incorporated documents discussed the Federal Constitution. The district court did not err in concluding that these claims were procedurally defaulted. Zeigler does not argue cause and prejudice to overcome the procedural default, but he argues that juror misconduct represents the "most fundamental kind of miscarriage of justice." This observation may, in some sense, be so; but this kind of event is not the kind of fundamental miscarriage of justice that must exist to justify setting aside a state court's determination of a procedural default. To establish a fundamental miscarriage of justice, a petitioner must show a colorable claim for actual innocence. See Schlup v. Delo, 115 S.Ct. 851, 867 (1995); Bailey, 172 F.3d at 1306. Zeigler has not made this showing. Zeigler's first two juror misconduct claims are procedurally barred, and the district court did not err when it denied relief on them.

Zeigler's third juror misconduct claim is that the verdict was the product of an unlawful compromise. The district court concluded that this claim was

were insufficient to present fairly the federal constitutional issues raised here. This manner of presentation is far too subtle. State courts are decision makers. They do not have to read imaginatively the arguments counsel put before them or to make new arguments for the parties. Cursory and conclusional sentences (unaccompanied by citations to federal law), like these two, did not present to the Florida courts the federal claim asserted to us.

procedurally barred because Zeigler did not raise it before the state courts. Zeigler claims that he raised this claim at different stages before the state courts.

Zeigler raised a compromise verdict claim as Issue VII in his 1983 Rule 3.850 motion. The claim was based on the amount of time the jurors spent deliberating the questions of guilt and the sentence. The compromise verdict claim raised here is more specific. It alleges that a specific juror, Ms. Brickle (and perhaps others), may have been persuaded to "compromise her belief in Mr. Zeigler's innocence in exchange for an agreement by her fellow jurors to recommend life imprisonment." While the present compromise verdict claim has more detail than the one in the 1983 3.850 motion, we cannot say that it is a different claim.

That Zeigler raised the compromise verdict claim in the 1983 3.850 motion does not save it from being procedurally defaulted, however. When the Florida Supreme Court affirmed the dismissal of the 1983 3.850 motion it said "all but two of the points raised either were, or could have been, presented at trial or on direct appeal." Zeigler, 452 So.2d at 539. Claim VII, which included the compromise verdict claim, was one of the claims the Florida Supreme Court dismissed with this comment. The compromise verdict claim was not raised on direct appeal, and it is procedurally defaulted under Smith, 840 F.2d at 791. Moreover, Zeigler does

15

not try to establish cause or prejudice; and because he has no colorable claim of actual innocence, he cannot establish a fundamental miscarriage of justice. The district court did not err when it denied relief on this claim.

Zeigler's juror misconduct claims are procedurally defaulted.

C. The Ineffective Assistance Claim

Zeigler argues that his trial counsel was ineffective because counsel failed to move to dismiss the grand jury indictment on account of Detective Frye's testimony. The district court concluded that this claim was procedurally defaulted because it was never presented to the state court. The district court noted that Zeigler, in his 1983 Rule 3.850 motion, had raised an ineffective assistance of counsel claim based on the failure to move to dismiss the indictment. But the district court said the Rule 3.850 claim was not the same claim made here because the Rule 3.850 claim made no mention of Detective Frye's testimony.

Zeigler argues that his 1983 Rule 3.850 ineffective assistance claims should be read in the light of the entire 3.850 motion which included another claim that the grand jury indictment was constitutionally invalid because of the false and prejudicial testimony of Detective Frye.

16

This claim is arguably procedurally barred; but even if this claim were not procedurally barred it is without merit. To prevail on an ineffective assistance of counsel claim under Strickland, a petitioner must show both that his counsel's performance was deficient and that he was prejudiced by his counsel's errors. Because Zeigler cannot show prejudice, we will not discuss whether his counsel's performance was constitutionally deficient. To show prejudice "'[P]etitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Chandler v. United States, 218 F.3d 1305, 1312-13 (quoting Darden v. Wainwright, 106 S.Ct. 2464, 2473 (1986)). In this case, Zeigler would have to show a reasonable probability that, had a motion to dismiss the indictment been made, it would have been granted.

Assuming that Detective Frye's testimony was actually false, and assuming that the prosecution was aware that the testimony was false,[6] Florida law only requires setting aside the indictment if the perjured testimony was "false in any material respect that would have affected the indictment." Anderson v. State, 574 So.2d 87 (Fla. 1991). The alleged false statements here do not involve Zeigler's

_____

[6] Zeigler never actually says that the prosecutors knew the statements were false, and the state argues that Zeigler has never shown the statements to be false.

17

role -- the part he played -- in this crime and would not justify setting aside the indictment. See id. (concluding that witness's perjured testimony concerning her role in the murder did not justify setting aside indictment because the statements did not involve defendant's role in the murder). Because Zeigler cannot show a reasonable probability that the indictment would have been dismissed, he has not shown prejudice and is not entitled to relief on this claim.

D. The Re-Sentencing Claims

Zeigler raises four re-sentencing claims: (1) the Florida Supreme Court failed to conduct a meaningful review of the re-sentencing trial judge's override of the jury's sentence recommendation; (2) the re-sentencing court failed to consider residual doubt as a mitigating circumstance; (3) the re-sentencing court improperly precluded the presentation of certain evidence; and (4) the re-sentencing court applied an invalid aggravating circumstance. The district court determined that the first and third claims were procedurally barred and denied the second and fourth claims on the merits.

Zeigler's first re-sentencing claim is that the Florida Supreme Court failed to conduct meaningful review because that high court did not determine whether a

18

reasonable jury could have found that life was an appropriate sentence and the court failed to conduct proportionality review.  The district court denied the claim as procedurally barred.  The district court reached its conclusion because the claim was denied as procedurally barred by the Florida Supreme Court when Zeigler sought to raise it in his 7 March 1994 Rule 3.850 motion.  Zeigler v. State, 654 So.2d 1162, 1164-65 (Fla. 1995) ("All of Zeigler's remaining claims are procedurally barred because they either were or should have been raised in previous proceedings.").[7]  Zeigler contends that this issue cannot be procedurally barred because it could not be raised on direct appeal. Zeigler notes that he raised it both in his March 1994 Rule 3.850 motion and in his October 1994 habeas corpus petition.

The state argues that this claim -- inadequate review by the state supreme court -- could and should have been raised in a motion for rehearing of his direct appeal before the Florida Supreme Court.

---

[7] We reject Zeigler's contention that the Florida Supreme Court's decision should be viewed merely as affirming the Florida circuit court's refusal to hear the claim: a refusal, Zeigler says, was on the ground that the adequacy of the Florida Supreme Court's review was beyond the purview of the circuit court.  The Florida Supreme Court's statement was clear: "[a]ll of Zeigler's remaining claims are procedurally barred because they either were or should have been raised in previous proceedings."  This statement covers Zeigler's inadequate review claim.

Zeigler filed a motion for rehearing connected with his direct appeal but did not raise this issue.[8] Zeigler did raise this claim in his Rule 3.850 motion. In affirming the denial of Zeigler's Rule 3.850 motion, the Florida Supreme Court included this claim with others that "were or should have been raised in previous proceedings." The Florida Supreme Court also said that it was not appropriate to use 3.850 motions as a second appeal or to use a different argument to relitigate the same issue. Zeigler's claim that the Florida Supreme Court provided inadequate review on direct appeal ultimately seeks to have the issues raised on direct appeal relitigated and, therefore, were not appropriately raised in Zeigler's Rule 3.850 motion.

Zeigler raised his inadequate-appellate-review claim again in his October 1994 petition for a writ of habeas corpus which was denied without opinion by the Florida Supreme Court. Zeigler argues that the denial without opinion should be viewed as a denial on the merits instead of a denial on procedural grounds.

We cannot conclude that the Florida Supreme Court's summary denial of Zeigler's 1994 habeas petition was a decision on the merits. In responding to

_____

[8] Zeigler does not contend in his briefs to us that the arguments raised in his petition for rehearing were sufficient to present the federal constitutional issues raised here. His sole argument is that his presentation of the constitutional issues to the Florida courts on collateral review is sufficient to preserve these claims.

Zeigler's 1994 habeas petition, the State's only argument in response to Zeigler's claims was that the claims were procedurally defaulted. The State specifically argued that Zeigler was attempting to relitigate issues that had been decided or could have been decided on direct appeal. Under Florida law habeas corpus is not to be used to relitigate claims that have been determined in a prior appeal. See Porter v. Dugger, 559 So.2d 201, 203 (Fla. 1990) ("Using a different argument to relitigate the same issue is inappropriate").

When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we "cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim." Kight v. Singletary, 50 F.3d 1539, 1545 (11th Cir. 1995) (citing Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993), see also, Coleman v. Thompson, 111 S.Ct. 2546, 2557 (1991). The district court properly concluded that this claim was procedurally barred.

Zeigler argues in his second re-sentencing claim that the re-sentencing court violated his constitutional rights by not considering residual doubt as a mitigating circumstance. Florida does not recognize residual or lingering doubt as a valid non-statutory mitigating circumstance. See Bates v. State, 750 So.2d 6, 9 n.2 (Fla. 1999). The Constitution does not compel state courts to consider residual doubt.

See <u>Franklin v. Lynaugh</u>, 108 S.Ct. 2320, 2327 (1988) (Plurality Opinion). ("This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor."). The district court correctly denied this claim on the merits.

Zeigler's third re-sentencing claim is that the re-sentencing judge improperly prevented him from presenting evidence challenging the factual basis for his convictions. The district court concluded that this re-sentencing issue was procedurally barred based on the state supreme court's determination that the issue was barred because it should have been raised on direct appeal of the re-sentencing. Zeigler claims that he did actually raise it in his direct appeal from his re-sentencing. We disagree.

This issue was not raised on direct appeal in a manner that would appraise the state court of the constitutional issue. See <u>Snowden</u>, 135 F.3d at 735. On direct appeal -- in the section of his brief arguing that the resentencing judge erred by concluding that the victims were killed for pecuniary gain -- Zeigler contended that the re-sentencing court erred by excluding testimony by Zeigler's lawyer because the lawyer's testimony would be an opinion.[9] In the section of his direct

---

[9] Zeigler's lawyer was called to testify that it was common for Zeigler to act on his own when following advice. "[W]hile the witness was allowed to say that 'it was not unusual' for Zeigler to act as he did without informing his lawyer, he was not allowed to explain why that was so, the judge

appeal brief contending that the jury was entitled to consider residual doubt as a basis for recommending a life sentence, Zeigler also contended that the re-sentencing court judge refused to allow Zeigler to argue the "evidentiary anomalies" which may have concerned the jury when they recommended a life sentence. This was not sufficient to put the district court on notice of the constitutional argument that Zeigler raises here: that the re-sentencing court unconstitutionally limited the presentation of evidence at resentencing.

Zeigler's final re-sentencing claim is that the aggravating circumstance of having been previously convicted of another capital offense or violent felony is unconstitutionally vague under Arave v. Creech, 113 S.Ct. 1534 (1993). In Creech, the Supreme Court said that a federal court, facing vague language in a state aggravating circumstance, should "'determine whether the state courts have further defined the vague terms and, if they have done so, whether those definitions are constitutionally sufficient, i.e., whether they provide some guidance to the sentencer.'" Id. at 1541 (quoting Walton v. Arizona, 110 S.Ct. 3047, 3057 (1990))(emphasis in original).

Zeigler argues that the previously-convicted aggravating circumstance is unconstitutionally vague when there are contemporaneous convictions (that is,

ruling that, '[a]nything further would be a personal opinion of the character of Mr. Zeigler."

23

when the defendant is convicted of multiple crimes at the same trial). Zeigler points out that the original sentencing judge concluded that the aggravating circumstance did not apply while the re-sentencing judge concluded that the circumstance applied. We will assume, but not decide, that the aggravating circumstance is vague and will look to see whether Florida Courts have adopted and adhered to a definition of the circumstance that provides sentencing courts with guidance.

Zeigler argues that the Florida Supreme Court's statements on the aggravating circumstance have not provided adequate guidance to the sentencer because the Court has not adhered to a single limiting definition. The district court determined that the Florida Supreme Court has adequately defined the circumstance and has adhered to that definition. We agree.

Zeigler's crime involved contemporaneous felonies on multiple victims.[10] In these kinds of cases, the Florida Supreme Court has said that the previously

----

[10] Some of the cases cited by Zeigler to show that the Florida Supreme Court has not adhered to a single definition involve contemporaneous crimes committed on a single murder victim. Compare Hardwick v. State, 461 So.2d 79 (Fla. 1984) (saying the aggravating circumstance could apply to crimes committed on the murder victim during the course of action leading to the murder) with Perry v. State, 522 So.2d 817, 820 (Fla. 1988) (saying the aggravating circumstance could not apply). These cases are of no help to Zeigler. See Sochor v. Florida, 112 S.Ct. 2114, 2121-22 (1992) (a showing that the state supreme court's various interpretations of aggravating factor left trial judge without sufficient guidance in other factual situations did not demonstrate that the trial judge lacked sufficient guidance in case at hand).

convicted aggravating circumstance applies. See <u>Wasko v. State</u>, 505 So.2d 1314, 1317 (Fla. 1987); <u>King v. State</u>, 390 So.2d 315, 320-21 (Fla. 1980) (receded from on other grounds by <u>Strickland v. State</u>, 437 So.2d 150, 152 (1983)).[11] Florida courts have defined the aggravating circumstance so that it applies to contemporaneous convictions for crimes committed on persons other than the murder victim. This definition provides sufficient guidance to sentencing courts, is constitutionally sufficient, and has been adhered to consistently.[12]

None of Zeigler's re-sentencing claims warrant granting the writ. The district court correctly denied relief on these claims.

## CONCLUSION

---

[11] <u>Meeks v. State</u>, 339 So.2d 186 (Fla. 1976), is not to the contrary. The Florida Supreme Court commented in <u>Meeks</u> that the previously-convicted aggravating circumstance did not apply to contemporaneous convictions. <u>Id.</u> at 190. In <u>Meeks,</u> the trial court did not apply the aggravating circumstance, and the only issue before the Florida Supreme Court was whether the prosecutor's comments to the jury about the defendant's contemporaneous convictions were unduly prejudicial. Although the Florida Supreme Court said the statutory aggravating circumstance did not apply, the issue was not before the court -- neither party argued that the aggravating circumstance applied; and the trial court had not applied it. Furthermore, as noted by Zeigler, the Florida Supreme Court later receded from its decision in <u>Meeks</u>. See <u>King</u>, 390 So.2d at 321.

[12] Zeigler also challenges the application of this aggravating circumstance under <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000) and <u>Ring v. Arizona</u>, 122 S.Ct. 2428 (2002). Zeigler's challenge fails because neither <u>Apprendi</u> nor <u>Ring</u> applies retroactively on collateral review to convictions that became final before they were decided. See <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001)(<u>Apprendi</u>); <u>Turner v. Crosby</u>, 339 F.3d 1247, 1283(11th Cir. 2003) (<u>Ring</u>).

25

We find no reversible error in the district court's opinion. The denial of Zeigler's petition for a writ of habeas corpus is AFFIRMED.