[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 30, 2006
THOMAS K. KAHN
CLERK

No. 05-16098

_____

D. C. Docket Nos. 03-00009-CV-4-RH-WCS
99-00023-CR-4-R

NGHIA LE,
a.k.a. Vince Le,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(October 30, 2006)**

Before BLACK and HULL, Circuit Judges, and RYSKAMP,[*] District Judge.

HULL, Circuit Judge:

Nghia "Vince" Le appeals the denial of his 28 U.S.C. § 2255 motion to

_____

[*]Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District
of Florida, sitting by designation.

vacate. After review and oral argument, we affirm.

## I. PROCEDURAL HISTORY

### A. Crime, Conviction and Sentence

The details of Le's crimes were reviewed on direct appeal and are summarized only briefly here. See United States v. Le, 256 F.3d 1229, 1231 (11th Cir. 2001). In February 1998, Le persuaded five acquaintances to break into the Tallahassee, Florida home of his ex-girfriend and rob her family at gunpoint. "Le organized the crime, provided temporary housing for the robbers, furnished one or more weapons, and pointed out the target house." Id. at 1231.

The police arrested the five perpetrators and eventually uncovered Le's role in planning the crime. Le was indicted on three federal counts: (1) conspiring to obstruct interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 1952; (2) obstructing interstate commerce, and attempting to do so, by robbery, in violation of 18 U.S.C. §§ 1951 and 1952; and (3) using or carrying a firearm while obstructing interstate commerce or attempting to do so, in violation of 18 U.S.C. § 924(c).

Represented by court-appointed counsel Richard Smith, Le elected to plead not guilty. At the December 1999 trial, the government introduced into evidence the statements of a number of the robbers implicating Le in the robbery. The

government also introduced Le's March 4, 1999, confession to the Federal Bureau of Investigation ("F.B.I."), in which Le admitted arranging the robbery in order to punish his ex-girlfriend. Le testified in his own defense, claiming that he had confessed falsely under police coercion and stating that he took no part in orchestrating the crime.

The jury convicted Le on all three counts. On direct appeal, we affirmed Le's convictions, but remanded for resentencing. Le, 256 F.3d at 1241. On remand, Le was sentenced to a total sentence of 262 months' imprisonment, and we affirmed Le's sentence on his second appeal. United States v. Le, No. 02-10596 (11th Cir. Sept. 3, 2002) (unpublished).

**B.     § 2255 Motion**

On January 9, 2003, Le filed a motion to vacate his conviction, pursuant to 28 U.S.C. § 2255. In his § 2255 motion, Le asserted that his trial counsel, Smith, was unconstitutionally ineffective for failing to seek a dismissal of the indictment on the grounds that the government interfered with the attorney-client relationship between Le and Smith, resulting in prejudice to Le. Specifically, Le asserted that while he was in jail awaiting trial, a jailhouse informant working with the government convinced him to go to trial and generally to distrust his trial counsel, Smith. Le argued that the government allowed the informant's intrusion into his

3

attorney-client relationship, and that the mistrust engendered between Le and Smith effectively denied Le his Fifth Amendment right to due process and his Sixth Amendment right to counsel. According to Le, if he had trusted Smith, he not only would have enjoyed a generally better defense, he also would have received a lesser sentence.

The district court referred Le's § 2255 motion to a magistrate judge. In a Report and Recommendation ("R&R"), the magistrate judge recommended that Le's motion be denied. The district court adopted the R&R in part, but remanded the § 2255 motion to the magistrate judge to hold an evidentiary hearing on Le's claim that the government interfered with his right to counsel. After conducting an evidentiary hearing, the magistrate judge issued a second R&R, again recommending that Le's § 2255 motion be denied. As set forth in the two R&Rs, the evidentiary hearing established the following facts relevant to Le's § 2255 motion.

## II. FACTS

After Le's indictment on March 2, 1999, Le awaited trial as a detainee in the Federal Detention Center ("FDC") in Tallahassee, Florida. Donald Bean also was a detainee at the FDC, and Le and Bean became friendly. Unbeknownst to Le at the time, Bean was acting as a jailhouse informant with respect to the investigation

4

of Claude DuBoc, another prisoner at the FDC.

Bean's law enforcement contact was Allan Beiner, an F.B.I. agent working on both the DuBoc and Le cases. Bean approached Agent Beiner and proposed that in addition to acting as an informant on the DuBoc case, Bean could inform Beiner of any incriminating information Le provided to Bean. Agent Beiner agreed.

Over the next four months, Bean had numerous phone conversations with Agent Beiner. Bean also had phone conversations with F.B.I. Agent Matthew Chester, who at some point replaced Agent Beiner as the primary agent on Le's case. These conversations were recorded by the FDC's phone system, and the recordings were produced as evidence at the evidentiary hearing.

Much of the information Bean conveyed to the F.B.I. agents did not relate to Le's robbery case or his trial defense, but rather to supposed admissions by Le that he was involved in additional criminal activity. Bean told the F.B.I. agents that Le had admitted to selling drugs and guns and counterfeiting checks, and that Le was aware of a group of people making false driver's licenses. According to Bean, Le confided that James Kenon, a Deputy Sheriff from Gadsden, California, had participated in these illegal activities. Bean informed the F.B.I. agents that Le was in contact with Kenon and that Kenon planned to visit Le in prison. In one

conversation, Chester expressed his hope that the information provided by Bean could help law enforcement "nail this Kenon guy."

However, the information Bean provided to the agents was not limited to information about possible future crimes or criminal activity distinct from the crimes charged in Le's indictment. Bean also elicited from Le, and conveyed to Agents Beiner and Chester, information about Le's case. Bean told Agent Beiner that Le had described the robbery, could identify the roles of each participant, and knew where the guns used in the robbery had been hidden. Bean informed the F.B.I. agents that according to Le, Kenon had promised to hire a new lawyer for Le and had encouraged Le to go to trial rather than plead guilty. Bean also suggested to the agents that he might be able to persuade Le to plead guilty, but that "at this point Kenon has got [Le] convinced" to go to trial.

Agents Beiner and Chester made only minimal efforts to dissuade Bean from conveying information about Le's defense to them. According to Agent Beiner's testimony, when Bean first became an informant, Agent Beiner told him "to walk away from" any conversations about defense strategy, and that "if he did get information like that, I didn't want to know." However, neither Agent Beiner nor Agent Chester stopped Bean when he told them information about Le's defense, and they did not admonish him to avoid those topics in the future. In one

6

conversation, Agent Chester actually asked Bean whether Le intended to go to trial. Agent Beiner also assisted in ensuring that Bean and Le would remain housed in close quarters in the FDC in order to facilitate Bean's ability to gather information from Le.

Bean was released from the FDC on August 18, 1999. On September 9, 1999, Le called Bean twice by phone, and the FDC recordings of both conversations were entered into evidence at the hearing. In the September 9, 1999, calls, Bean made statements to Le that revealed that Bean was interfering with the attorney-client relationship between Smith and Le, but in a different manner than suggested by Bean's conversations with Agents Beiner and Chester. Although Bean had told Agents Beiner and Chester that he would try to dissuade Le from going to trial, in his conversations with Le, Bean actually encouraged Le to go to trial. Likewise, although Bean told Agents Beiner and Chester that Kenon had offered to get Le a new attorney, in his phone conversations with Le, Bean himself offered Le the assistance of another attorney.[1] Thus, in Bean's phone conversations with Le, Bean himself advocated a trial defense strategy and assured Le that the government had no case against him.

---

[1] At the evidentiary hearing, Kenon testified that although he spoke to Le by phone while Le was at the FDC, Kenon never told Le he would hire an attorney for him, never intended to visit Le, and never advised Le to go to trial.

7

At the evidentiary hearing, Le explained how his interactions with Bean had polluted his relationship with Smith. According to Le, Bean seemed knowledgeable about the legal system, and Le quickly grew to trust Bean's advice about his case. Le testified that prior to interacting with Bean, he had wanted to enter a guilty plea, but that Bean "convinced me that . . . the government had no case" and encouraged Le to go to trial rather than plead guilty. Le testified that Bean had disparaged Le's court-appointed attorney, Smith, by pointing out that he was paid by the government. Bean had promised Le that he would get Le a top-notch attorney to help him win his trial, and that he should not listen to any advice by Smith to the contrary.

Le testified that at some point prior to Bean's release on August 18, 1999, Le inadvertently read some notes written by Bean. Bean's notes revealed to Le that Bean was informing the F.B.I. about their conversations. Thus, when Le spoke with Bean on the phone on September 9, 1999, Le already knew that Bean was not acting in his interest. Le testified that in the September 9, 1999, conversations, he merely pretended to be taking Bean's advice but was in fact simply calling to establish a record of Bean's deceit.

Le testified that around the same time, he told Smith that he had been interacting with an informant. According to Le, his relationship with Smith

8

"smoothed out a little bit" after Le discovered that Bean was not acting in his interest and informed Smith about what Bean had said.

Smith, Le's trial counsel, also testified at the evidentiary hearing. Smith asserted that his relationship with Le had been "somewhere between not good and [he] didn't trust a word I said," and he recalled being "at odds [with Le] regarding his defense." In Smith's estimation, their poor relationship was due in part to the fact that Bean had deluded Le into overly optimistic expectations of his prospects at trial, and because Le had become convinced that Bean would be providing him with a better attorney.

Le discovered Bean's duplicity in August 1999, which was approximately four months before Le's trial began on December 6, 1999. Smith testified that after Le told him about his interactions with Bean, he and Le "ha[d] some sort of an epiphany prior to trial where at least I felt satisfied that [Le] was telling me everything that I needed to know to represent him." Smith further testified that his lack of cooperation with Le did not prevent him from any necessary trial preparation. Smith also recalled that throughout his representation of Le, Le's "desire was to go to trial" and he "wasn't interested in negotiations."

After adopting the above facts outlined in the second R&R, the district court denied Le's § 2255 motion. The district court found that Bean's interference with

9

Le's trial strategy and the F.B.I. agents' failure to prevent Bean's interference represented a "rather clear violation of [Le's] sixth amendment rights." Nonetheless, the district court denied Le's § 2255 motion, concluding that Le suffered no prejudice on account of the interference.[2] The district court, however, granted Le a Certificate of Appealability on his claim.

### III.  DISCUSSION

Le argues that Smith provided ineffective assistance of counsel by failing to seek a dismissal of the indictment based on Bean's interference with the attorney-client relationship.  Alternatively, Le argues that Bean's interference resulted in the constructive denial of counsel such that no attorney could have been effective and prejudice should be presumed.  We conclude that these arguments lack merit, and affirm the denial of Le's § 2255 motion.

### A.     Failure to Seek a Dismissal of the Indictment

To prevail on an ineffective-assistance claim, Le must show that his counsel's performance was constitutionally deficient and that he was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  Here, we conclude that Le failed to establish prejudice, and therefore, do

---

[2]We review the district court's legal conclusions de novo and its factual findings under a clear error standard. United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999).

not evaluate counsel's performance.[3]

To establish prejudice, Le must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. Thus, here, Le must show a reasonable probability that a motion to dismiss the indictment based on Bean's interference would have been granted. See, e.g., Zeigler v. Crosby, 345 F.3d 1300, 1309 (11th Cir. 2003). Therefore, in order to analyze whether Le was prejudiced by counsel's inaction, we must examine the merits of Le's underlying constitutional claim to determine whether a motion to dismiss the indictment would have been successful.

In United States v. Morrison, the Supreme Court analyzed whether a dismissal of the indictment was an appropriate remedy for an intentional violation of a defendant's Sixth Amendment right to counsel where the defendant "demonstrated no prejudice of any kind, either transitory or permanent, to the ability of her counsel to provide adequate representation . . . ." 449 U.S. 361, 366, 101 S. Ct. 665, 669 (1981). The Supreme Court concluded that, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is

---

[3]See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see also Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong . . . .").

11

plainly inappropriate, even though the violation may have been deliberate." Id. at 365, 101 S. Ct. at 668. Therefore, even if we assume arguendo that Le's constitutional rights were violated by Bean's interference with the attorney-client relationship, Le would not have been entitled to a dismissal of the indictment unless he could have shown that the interference prejudiced his defense. Id.; see also United States v. Sims, 845 F.2d 1564, 1569 (11th Cir. 1988) (noting that dismissal of the indictment for an alleged Sixth Amendment violation is not warranted absent a showing of "demonstrable prejudice"); United States v. Bell, 776 F.2d 965, 972 (11th Cir. 1985) (same).[4]

As the Supreme Court has noted, a Sixth Amendment claim of interference with counsel is much weaker where none of the state's evidence is derived from the improper government intrusions into the attorney-client relationship. See Weatherford v. Bursey, 429 U.S. 545, 554, 97 S. Ct. 837, 843 (1977). Bean did not testify at Le's trial and none of the information Bean provided to the F.B.I. was used against Le at trial. Accordingly, Le cannot show that Bean's interference directly prejudiced Le's defense at trial. Thus, Le is left to argue that Bean's actions indirectly harmed Le's defense by causing Le to mistrust Smith and to

_____

[4]Le argues that prejudice to his defense should be presumed in this case because the government's interference into the attorney-client relationship was intentional. This argument is precluded based on Morrison, which requires a showing of demonstrable prejudice even for a deliberate violation of a defendant's constitutional rights, and we do not discuss it further.

12

make an ill-advised decision to go to trial rather than plead guilty.

Le has failed to establish that Bean impeded his defense in this manner for several reasons. First, Bean's interference into Le's relationship with counsel ended almost four months before trial. As established at the evidentiary hearing, Le discovered that Bean was a government informant sometime before Bean left the FDC on August 18, 1999, almost four months before Le's trial began on December 6, 1999. After realizing that Bean had been manipulating him, Le had no reason to continue relying on Bean's bogus legal advice. In fact, Le immediately told Smith that he had been communicating with an informant, and according to both Le and Smith, their relationship improved thereafter. During this time, Smith filed two motions to suppress, represented Le at the suppression hearing, filed an alibi motion, and submitted writs for the production of five prisoner witnesses. In short, Le and Smith had almost four months to prepare a defense – or to negotiate a guilty plea – unimpeded by any interference into their attorney-client relationship.

Second, we find wholly unpersuasive Le's argument that Bean's interference prevented him from pleading guilty. Contrary to Le's claim that it was Bean who convinced him to go to trial, the record indicates that Le always intended to go to trial. Smith testified that throughout his representation of Le (which notably began

13

before Le met Bean and continued after Le realized Bean was an informant), Le always wanted to go to trial and never suggested otherwise. It appears that Le's strategy was to go to trial and perjure himself in order to cast doubt on his post-arrest confession to the F.B.I. In addition, because Le was not present during the home invasion and the victims could not testify about his involvement, Le called his co-conspirator Tommy Ha to testify at trial that Le had no knowledge of, or involvement in, the robbery. Le's strategy failed, however, and Le now concedes his guilt and that he testified falsely at trial. Finally, we note that there were significant legal issues about the interstate commerce nexus requirement of Le's crimes that Le raised at trial and on direct appeal, see Le, 256 F.3d at 1231-37, and these issues may have further emboldened Le's decision to go to trial and attempt to obtain an acquittal.

Given that Le learned of Bean's duplicity almost four months before trial, Smith's testimony that Le always intended to go to trial, and Le's concession that he perjured himself at trial, we find no error in the district court's findings that Bean did not influence Le's decision to go to trial and that Le was not prejudiced by the government's intrusion into his attorney-client relationship. Accordingly, Le cannot demonstrate prejudice from Smith's decision not to seek a dismissal of the indictment, and therefore, we reject his claim of ineffective assistance of

14

counsel.[5]

## B. Constructive Denial of Counsel

Le also argues that Bean's interference caused him to distrust Smith to such an extent that "no attorney could have been effective." Le asserts that this complete breakdown of the attorney-client relationship amounts to a constructive denial of counsel, and therefore, that prejudice should be presumed. We disagree and conclude that Le is not entitled to a presumption of prejudice under the facts of this case.

In Strickland, the Supreme Court explained that, in certain circumstances, such as the "constructive denial of the assistance of counsel altogether," prejudice is so likely that a case-by-case inquiry is not worth the cost, and therefore, that prejudice is to be presumed. 466 U.S. at 692, 104 S. Ct. at 2067. This Court has recognized that "causing a complete breakdown of communication between a defendant and his attorney" may constitute a constructive denial of counsel. United States v. Walker, 839 F.2d 1483, 1486 (11th Cir. 1988).

---

[5]To the extent that Le is attempting to have the indictment dismissed based on government misconduct, that claim is procedurally barred because Le failed to pursue such a claim at trial or on direct appeal. See Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) ("Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."). Thus, we have considered Le's claim as a claim of ineffective assistance of counsel, and evaluated whether counsel was ineffective in failing to move to dismiss the indictment, even though that necessarily required us to evaluate to some extent the potential merits of such a motion.

15

Here, we cannot say that Bean's interference caused a complete breakdown of communication between Le and Smith, or that Le was constructively denied the assistance of counsel. While it is true that Le and Smith had a rather poor relationship during the time that Bean was influencing Le, both Le and Smith acknowledged that their relationship improved upon learning, almost four months before trial, that Bean was an F.B.I. informant. The record also reflects this improvement. After discovering Bean's duplicity, Smith actively assisted Le by filing two motions to suppress, representing Le at the suppression hearing, filing an alibi motion, and submitting writs for the production of five prisoner witnesses. Moreover, there is no indication in the record that Smith's preparation for trial or his representation of Le at trial was compromised in any manner. Indeed, Smith characterized the change in Le as an "epiphany," and Smith felt that Le told him "everything that I needed to know to represent him." Under all the facts and circumstances of this case, we conclude that Bean's interference did not operate as a constructive denial of counsel, and we decline to presume that Le was prejudiced as a result of Smith's representation.[6]

---

[6]To the extent that Le is arguing that his counsel was ineffective for failing to properly advise him regarding a plea, we also reject this argument. Le has not shown a reasonable probability that he would have pled guilty but for Bean's actions and/or Smith's failure to challenge Bean's actions. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985) (claim that counsel's deficient performance adversely affected plea decision requires showing that "counsel's constitutionally ineffective performance affected the outcome of the plea process"); Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (same). As discussed above,

16

## IV. CONCLUSION

For the above stated reasons, we affirm the denial of Le's § 2255 motion.

**AFFIRMED.**

---

Le always intended to go to trial, even before he met with Bean. Indeed, even as of oral argument in this appeal, Le is requesting a new trial, and there is no proffer by Le that he wants to plead guilty now.